**HIGHWAY INS. UNDERWRITERS v. LE BEAU et al.**

No. 14644.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 13, 1944.

Rehearing Granted Nov. 17, 1944.

Second Motion for Rehearing Denied Jan. 5, 1945.

T. H. Yarbrough, of Bowie, and Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

Donald & Donald, of Bowie, for appellees.

SPEER, Justice.

This a workmen's compensation case. Mrs. Inez LeBeau, for herself and as next friend for her minor child, alleged to be the sole surviving beneficiaries of R. C. LeBeau, deceased, sued Highway Insurance Underwriters for dependents' benefits and compensation for the death of the husband and father, R. C. LeBeau. J. D. Franklin was the employer.

Insofar as necessary to state, plaintiff sought recovery because the employer had previously purchased from the carrier a policy of workmen's compensation insurance covering the compensable injuries to R. C. LeBeau; that for nearly two years prior to November 24, 1942, when he died, deceased had been in the regular employ of J. D. Franklin, doing general welding labor; that on the last mentioned date, while in course of such employment, attempting to weld the broken axle of a heavy machine, he was required to lift

and handle heavy bars of iron, which necessitated much physical strength and exertion; that deceased had recently been afflicted with influenza, missed work a day or so, but while yet weakened from said attack, had practically recovered therefrom when called upon to perform the labors described; that because of said previous weakened condition and the difficult labors performed and the accidental strains and overexertion of his physical strength, he received an injury resulting in an acute dilation of the heart, from which he died almost instantly. Plaintiff alleged the issuance by the carrier of the policy and its possession by the employer, and that it was in full force and effect at all times applicable to the controversy here. Appropriate allegations were made for jurisdictional purposes and for lump-sum settlement in lieu of weekly payments.

Defendant carrier answered with general denial, and special pleas that no accidental injury occurred, that deceased's death was from natural causes and not from accidental injuries. There were other special pleas not pertinent here.

Trial was to a jury. At the conclusion of taking testimony, the insurance company moved for an instructed verdict upon several grounds, each of which has been brought forward as a point of error. The motion was overruled.

The special issues submitted by the court were preceded by approved definitions of "injury," "accident," and "preponderance of the evidence." In response to certain issues submitted, the jury found (1) deceased was an employee of J. D. Franklin at the time of his death; (2) deceased sustained an injury to the physical structure of his body while working in Montague County, Texas, on November 24, 1942; (3) he was in due course of employment when injured; (4) this is a special case in which manifest hardship and injustice will result to plaintiff if the compensation is not paid to her in lump-sum; (7) deceased had worked in the same employment during substantially the whole year next preceding the date of the injury; and (8) deceased's average weekly wage was $40 or more.

Special issues 5, 6, 9 and 10 were not answered. These issues inquired: (5) if they found deceased's death was not the result of natural causes; (6) was deceased's death the result of an accident; (9) did deceased overexert himself on November 24, 1942, while trying to remove the shaft from the machine he was called upon to repair; and if No. 9 was answered "no" they need not further answer, but if answered "yes" then answer (10) did such overexertion cause the death of deceased. We have not attempted to quote the questions; each was predicated upon the preponderance of the evidence and properly fixed the burden of proof.

After the verdict was returned and received, carrier moved for judgment notwithstanding the verdict; this was overruled and motion of plaintiff for judgment on the verdict was sustained. Judgment was entered in lump-sum for plaintiff and her child with an apportionment thereof to each. After motion for new trial was overruled, exceptions taken, and notice given, this appeal was perfected.

The insurance carrier (appellant) presents in its points of error 1, 2, 3, 5, and 6 as many reason why it contends its motion for an instructed verdict, or, in the alternative, its motion for judgment notwithstanding the verdict, should have been sustained.

These points are based upon the theory that there was no competent testimony (1) that deceased's death was caused by any injuries sustained by him; and (2) that J. D. Franklin and Mrs. LeBeau, non-expert witnesses, were permitted to testify, over its objections, that deceased had had the flu or influenza a week or two before his death.

Mrs. LeBeau testified in her own behalf relative to the condition of her husband's general health. She said in effect that she had known him about eight years and that they were married about seven years before his death; that he was 32 years old, weighed about 174 pounds, was of muscular build; he never made any complaint in her presence of being sick—"Nothing only he had the influenza" about two weeks before he died and was off work a day or two; she didn't know exactly how long. Appellant objected to her answer that he had the "flu" because she was not qualified to testify to that character of question —"that being a germ and that being a medical question, and we ask that it be stricken." The objection and motion were overruled. Counsel for appellant then cross-examined the witness and she repeated what she had previously said, and added that they did not have a doctor, and that he had recovered from it at the

time of his death. Counsel then asked her: "When you spoke of the flu, it is just like anybody says, when they don't feel good this day and time, they call it the 'flu'?" She answered: "No, not necessarily; you usually know when you have the flu. I do." J. D. Franklin (the employer) also testified, over appellant's objection, that deceased had had the flu some time before his death, but he would not attempt to fix the date.

Appellant contends that the erroneous introduction of this testimony materially affects the basis of appellee's right of recovery. We shall later have something to say about its materiality.

The general rule controlling the admissibility of such testimony is laid down in 19 Tex.Jur. 354 et seq., § 231, in this language: "A witness need not be an expert in medical matters in order to be competent to express an opinion as to the physical condition of himself or another. And it is clear that in describing such a condition the witness is not required to state all the evidentiary facts on which his opinion is based; his statement may partake largely of the nature of a summary of, or conclusion from, such facts. These rules are applicable alike whether the testimony relates to general health, or to particular disease or injury. * * *"

The rule announced in 20 American Jurisprudence, 721, § 860, covers Texas and other jurisdictions. It appears that there is an apparent conflict in the views taken in different states. There, it seems, some states hold to the rule that the nonexpert witness may detail the apparent physical condition of another person as to all matters open to ordinary observation to persons of common experience but does not extend to latent conditions or the existence of a particular disease which is determinable only by the peculiar experience and training of a physician. The text says: "However, according to most courts, in the case of common diseases and disabilities, familiarity with which is a part of general knowledge, one who has observed the patient during his illness and has seen similar cases may testify as to what disease or ailment he had. This rule is upon the theory that a lay person of ordinary intelligence can determine the existence of a disease which is of frequent occurrence among people generally. * * *"

In Pullman Palace Car Co. v. Smith, 79 Tex. 468, 14 S.W. 993, 994, 13 L.R.A. 215, 23 Am.St.Rep. 356, after plaintiff's wife had detailed the manner in which she was exposed to cold and rain and that she became ill from it, she was permitted to say: "I know of nothing else that could have caused my illness except the exposure to which I was subjected on the morning when I got off the train."

It has been held by our courts that a nonexpert may testify to such matters as: A plaintiff may testify that his injuries are permanent, Turner v. Stoker, Tex.Civ. App., 289 S.W. 190, writ refused. That plaintiff's deceased husband was paralyzed and could not speak, Abee v. Bargas, Tex. Civ.App., 65 S.W. 489. Plaintiff was all crippled up and couldn't walk very far, San Antonio Traction Co. v. Flory, 45 Tex. Civ.App. 233, 100 S.W. 200, writ refused. A husband plaintiff may testify that his wife had never had any cough, lung trouble or female trouble prior to the exposure complained of, St. Louis Southwestern R. Co. v. Lowe, Tex.Civ.App., 97 S.W. 1087, writ refused. Witness may testify from observation that another was still suffering from an injury and that she had a cramping and numbness in her limbs, Fort Worth & D. C. R. Co. v. Morrison, Tex. Civ.App., 129 S.W. 1159. Wife may testify that her injured husband had difficulty in passing his urine, Houston & T. C. R. Co. v. Johnson, Tex.Civ.App., 118 S.W. 1150, affirmed by Supreme Court, 103 Tex. 320, 127 S.W. 539. Plaintiff may testify in his own behalf that he has never had a hernia in any form, prior to the incident complained of, Texas Employers' Ins. Ass'n v. Perry, Tex.Civ.App., 35 S.W. 2d 1087, writ refused. In a suit for malpractice involving the result of a tonsillectomy, the parents were permitted to testify that their child, upon whom the defendant operated, had never had an apparent disease of his mouth or throat. The testimony was objected to upon the ground that it called for a conclusion from a nonexpert, Shuffield v. Taylor, 125 Tex. 601, 83 S.W.2d 955, adopted by the Supreme Court.

It is not without some difficulty that our courts are able to draw a definite line of distinction between the limit to which a nonexpert may go in his testimony and where the knowledge and skill of a trained physician is required. It seems that the nonexpert may state as a fact the existence of a "common" disease or ailment—one which all persons of common knowledge

and experience are familiar with. Whether or not the "flu" or influenza is such, would determine this point if it was material to the ultimate result of the case. One might, with propriety, start with such ailments as colds, measles, mumps, whooping cough, chicken pox, influenza, mouth disease, throat and lung trouble, paralysis, fevers of varying kinds, different types of pneumonia and in cases of the kind before us, where the question was not whether a person was of sound health at the time of the issuance of a policy of life insurance, one could scarcely tell where a "common and well known" disease or ailment was included and where the more uncommon ones begin requiring medical skill to diagnose them.

In General Life Ins. v. Potter, Tex.Civ. App., 124 S.W.2d 409, the question at issue was whether the insured at the time of the renewal of the policy was in sound health. It was contended that insured was afflicted with cancer of the lungs of long standing, and the court held it was error for the beneficiary wife to testify that her husband died of bronchial pneumonia, she being a nonexpert. The opinion reviews many authorities, some of which we have cited above.

In the instant case, the qualification of Mrs. LeBeau to know and discern a case of "flu," with which she said her husband was afflicted, was approached when she was asked on cross-examination substantially that when people are feeling bad they commonly call it the "flu." She replied that this was not necessarily true because when one had the flu he knew it, at least she did. She was not questioned further with respect to her knowledge of what she called influenza. In this particular case, we think her opinion that her husband had had the influenza does not present reversible error, especially in view of disclosures made of her knowledge of that ailment. As we shall presently demonstrate from the doctor's testimony, her opinion was equivalent to a statement that he had been ill or indisposed shortly before he died.

Based upon hypothetical questions, which did not disclose that deceased previously had the influenza, but detailing the strenuous work being performed at the time of his death, the doctor said in his opinion he suffered an acute dilation of the heart produced from overexertion; that a person could have an abnormal heart which might dilate to such an extent that it would not resume its normal condition, and produce death instantly. This is in substance only, a summary of his testimony. To our minds this kind of testimony tends to show that the doctor reasoned that deceased must have had an abnormal heart from some cause and that deceased may not have known it. We shall later go further into the doctor's testimony.

Testimony of J. D. Franklin to the effect that deceased had the "flu" before he died (absent a showing that the witness had seen him during said illness or otherwise known of the nature of his ailment) was inadmissible over the objection that it was hearsay and a conclusion of the witness. But at most it was only cumulative of the wife's testimony and presents no error requiring a reversal. These points are overruled.

Fourth point assigns error of the court in refusing to strike out the testimony of Dr. Davis because on cross examination he admitted, that in forming his opinion as to the cause of LeBeau's death, he had based one inference upon another and one presumption upon another and had been influenced by information given by the wife.

Dr. Davis' testimony is susceptible to more than one construction if isolated parts are considered alone. But as a whole, it is fairly susceptible to being his opinion that LeBeau died from a acute dilation of the heart brought on by overexertion. Dr. Davis only saw deceased shortly after he had died. He inquired of the only two persons present at the time of the death and reached his conclusion.

The undisputed testimony shows that deceased had worked on another job for his employer seven or eight hours on the day of his death; that the call for someone to come to the place of the tragedy came late in the afternoon, and deceased told his employer he would go to the job. An axle in a heavy lifting machine had broken and had to be welded; the axle was tightly fitted in the machine and had to be driven out by means of a punch consisting of an iron bar 1¼" in diameter, four to seven feet long; the punch bar had to be held rigidly ten or twelve inches from the ground with one end against the axle while two strong men alternated in striking the other end with a 14 pound sledge hammer. Deceased sat flat on the ground extending

his legs under the punch bar and held it while the other men struck it with the sledge hammer. The work being performed by him required much tenseness, strength and exertion on his part. If the bar should not be held exactly in place the blow would give him a heavy jar; if the end being struck should be out of alignment the heavy sledge hammer would miss the punch bar and strike the one holding it. After this process had continued several minutes, deceased, without saying a word, relaxed his hold on the bar, and fell backward on the ground, first grasping his chest with his hands and then his hands fell limply to his sides. He died instantly.

Dr. Davis' testimony was based upon hypothetical questions put to him by plaintiff's counsel. The main question was lengthy and covers more than a page in the printed brief. It covered all the material facts disclosed by the testimony above mentioned. As first put the question embraced the assumption that deceased had had influenza about two weeks before his death, but upon objection by appellant to that expression, the question was changed omitting reference to influenza and substituted therefor: "That his wife states that he had been indisposed and had been sick some week or more before November 24, 1942." Following the long, hypothetical question and assuming the matters detailed were true, the doctor was asked to give his opinion whether deceased died from an over-exertion or from natural causes. After much controversy between counsel and the court, the doctor said deceased probably died from overexertion of the heart or dilation—that dilation means a condition where the heart dilates to the extent it doesn't recover; he further explained that the heart could be dilated by overexertion. The hypothetical question was partly repeated and reference made to what was in the former question, and the doctor was asked what in his opinion produced death and he answered: "Caused from a dilated heart due to over-exertion." On cross-examination the doctor said from the facts set out in the questions before him he could only give an opinion as to what caused death from what had taken place and the symptoms—he thought it possible for a doctor to take the symptoms detailed and tell what caused the death; the doctor further said he thought the opinion he had given as to what caused the death was more likely than anything else and that was as far as

he could go. "He said the heart naturally dilates and contracts and an abnormal dilation can be caused by anything; but such abnormal dilations are usually brought on by previous exertions. He said persons may have dilations of the heart for years before they have an abnormal dilation; such may cause death while asleep or sitting down, and that kind of death is known as being brought about by natural causes; but he did not think that was true in this case, but thought dilation was brought on by exertion. He would not say that deceased would likely have died when he did if he had been sitting at home or driving across country, but he said: "I am sure he wouldn't." He said he did not see the dilated heart, but that it was bad enough to cause death. He said he did not base his opinion on the assumption that deceased had a dilated heart before the minute he fell over. That deceased would have had to have an abnormal heart ahead of time. In response to further cross-examination the doctor said he was assuming that flu brought on the trouble with deceased's heart and that the work being done was the cause of death. He said he based these assumptions and inferences one upon the other in reaching his opinion as to the cause of death; that the "flu" lasts longer than a day or two, but would not say that because deceased was off work only a day or two that he did not have the "flu;" that the wife would not necessarily know whether deceased had recovered from the "flu." That a man may have a bad heart and not know it.

It will be observed that the matter of deceased having had the influenza was not embraced in the hypothetical questions upon which the doctor expressed his opinions. But it seems that "flu" was mentioned many times during the several colloquies as well, also the doctor said plaintiff had told him some things which he took into consideration. What he may have been told by plaintiff is not revealed by the record.

■ We have not attempted to give in detail all of Dr. Davis' testimony, but have given enough to show that isolated parts of it could be construed to mean various things. We are unwilling to permit this case to turn upon the theory alone that the doctor's opinion may have been based upon one inference or presumption upon another, for the reason that in the very nature of an expert's testimony, it is often that the opinion must be based upon the assumption

that the matters contained in a hypothetical question are true. We think the court committed no error in refusing to withdraw the testimony of Dr. Davis from the jury and the point is overruled.

Seventh point of error complains because the court rendered judgment for plaintiff on her motion, in spite of the fact that the jury failed to agree on issues submitted to them on whether or not deceased's death resulted from natural causes, whether death was caused by an accident, whether deceased overexerted himself, and whether or not such alleged overexertion caused his death.

As stated above by us, special issues 5, 6, 9, and 10 raising the questions were submitted by the court and were not answered by the jury. Each and all matters inquired about were alleged by one or the other of the parties. There was testimony in support of each.

As pointed out, there are parts of Dr. Davis' testimony which fairly raised the question of whether or not deceased died from natural causes; this was affirmatively pleaded by appellant, defendant below. The plaintiff alleged that deceased sustained an accidental injury which resulted in his death, and also alleged that his death resulted from an overexertion in his then physical condition. Much was said in the evidence as to the physical exertion of deceased immediately before his death and as to its results.

■■■■ It is contended by appellee that the jury having found that deceased sustained injury to the physical structure of the body, and that it happened simultaneously with his death, and since the statute only required such a finding of fact, no necessity existed for a further finding that it was accidental. With this contention we cannot agree. It is definitely settled in this state that for an injury to the compensable it must have been an accidental one as contemplated by the Workmen's Compensation Act. In United States Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465, 466, writ refused, the court held that to render the act constitutional, the courts have read into the statutory definition of injury the element of accident, "So that to render an injury compensable it must be shown to have been an accidental injury." This rule is announced in 45 T.J. 471, § 80, and there are many cases cited in the footnote, supporting it. See also Traders & General

Ins. Co. v. Weatherford, Tex.Civ.App., 124 S.W.2d 423, writ dismissed, judgment correct.

■■■■ It cannot be said that because the answers made to special issues cover and embrace any finding that may have been made in response to the inquiries not answered, it would remove the necessity for a finding on the necessary elements of both plaintiff's and defendant's theories pleaded and upon which there was testimony offered. Plaintiff could not recover except with a jury finding that the injuries sustained were accidental, and defendant was entitled to have findings on its affirmative defenses pleaded and upon which there was some testimony. In Texas Indemnity Ins. Co. v. Thibodeaux, 129 Tex. 655, 106 S.W. 2d 268, the Supreme Court had before it a similar question to the one before us; there they held that although the jury had found an injury to be total and permanent, yet because of the defenses pleaded and the evidence adduced, defendant was entitled to have answered questions of whether or not the injury rendered the employee partially or temporarily incapacitated, etc., along with appropriate corollary inquiries. The court held that because such answers might produce a conflict in the verdict, furnishes no reason for denying each party a submission of his theory of the case presented in the pleadings and evidence. Substantially to the same effect is the holding in Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314. We have definitely concluded that the entering of judgment on the verdict as returned without answers to the issues pointed out presents reversible error for which the judgment must be reversed and the cause remanded.

Points of error 8, 9, 10, 11 and 12 are referable to asserted improper argument made by appellee's counsel in his closing address to the jury. The bills of exception brought forward in support of the points bear qualifications of the trial court, showing in substance the previous arguments made by appellant's counsel in each instance to which appellee's counsel was replying; the court indicated a belief that the reply argument was justified by that previously made.

■■■■ Insofar as the factual statements are concerned in the bills, this record reveals that appellant and this court are bound thereby. 3 Tex.Jur. 657, § 464;

Lowrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739; Jaffe v. Deckard, Tex.Civ. App., 261 S.W. 390, writ refused. But it must be borne in mind that the reply argument, to be justified, must bear a direct relation to the subject matter of the preceding argument. 41 Tex.Jur. 798, § 75.

 Our courts have constantly warned counsel for litigants against highly inflammatory arguments which are calculated to excite the prejudice of jurors and especially have all forms of comparative wealth between the parties been condemned. Blohm v. Krueger, Tex.Civ.App., 297 S.W. 596, writ dismissed.

Since this appeal must be reversed for errors herein pointed out, perhaps a similar situation to that under discussion will not occur again and we therefore refrain from further comment on it.

Thirteenth point complains of the submission of special issue No. 2, which inquired if deceased suffered a physical injury to his body; the error complained of is based upon a lack of competent testimony to authorize its submission.

 In view of the record before us, some of which we have mentioned, we think the point presents no error. The evidence presented a fact issue for jury determination. Our courts have many times discussed similar situations and the cases seem to be based on the theory that under conditions such as we have in this case, the question of whether or not injury is to the physical structure of the body should be passed upon by the jury. In some of the cases the matter of whether or not the injury was accidental is discussed. Under other points in this opinion we have shown the necessity of establishing that before an injury is compensable, it must be found to have been the result of an accident. Some of the cases involving injuries from strains and overexertion, when compensation was sought by employees, are: Southwestern Surety Ins. Co. v. Owens, Tex.Civ.App., 198 S.W. 662, writ refused; Georgia Casualty Co. v. Mixner, Tex.Civ.App., 289 S. W. 420, writ refused; Roland v. Employers' Casualty Co., Tex.Civ.App., 290 S.W. 895, affirmed Tex.Com.App., 1 S.W.2d 568, without discussing the point before us; Texas Employers Ins. Ass'n v. McGrady, Tex.Civ. App., 296 S.W. 920, writ dismissed; Security Union Ins. Co. v. Alsop, Tex.Civ. App., 1 S.W.2d 921; Fidelity Union Casualty Co. v. Martin, Tex.Civ.App., 45 S.W.

2d 682, writ dismissed; Theago v. Royalty Indemnity Co., Tex.Civ.App., 70 S.W.2d 473, writ dismissed; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, writ dismissed; U. S. Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465, writ refused. Many others of similar nature are available, but we think these sufficient.

Fourteenth point of error complains because the court refused to give appellant's requested peremptory instruction when the undisputed testimony of the employer showed that he had never had as many as three employees so as to make him eligible to come under the provisions of the Workmen's Compensation Act.

Appellee's claim for herself and child is based on the policy alleged to have been issued by appellant to the employer. She proved by the employer that he held such policy at the time of LeBeau's death and at the time of trial. At the trial counsel for appellant admitted the employer held such policy. After appellee (plaintiff below) had rested her case, appellant offered some of its testimony and called the employer back to the stand for further cross-examination, and proved by him that he had never at any time had more than two employees. All of the employer's testimony along this line was objected to by appellee upon the ground that there was no pleading by appellant upon which to base such evidence. Court overruled the objection.

Article 8306, sec. 2, Vernon's Ann.Civ. St., provides substantially that the provisions of the Workmen's Compensation Act shall not apply to actions to recover damages for death resulting from personal injuries sustained by domestic servants, farm laborers, nor to employees of any firm, person or corporation having in his or their employ less than three employees; that any employer of three or more employees at the time of becoming a subscriber shall remain a subscriber although the number of employees may thereafter be less than three.

In Holmes v. Traveler's Ins. Co., Tex. Civ.App., 148 S.W.2d 270, writ refused, it was held that one performing farm or agricultural labor for another who in fact carried compensation insurance on employees engaged in another business, could not recover for injuries sustained; citing among other cases, Hill v. Georgia Casualty Co., Tex.Com.App., 45 S.W.2d 566. In Service Mutual Ins. Co. v. Blain et al., 140

Tex. 541, 168 S.W.2d 854, relied upon by appellant, an employee of a bakery company received injuries while in course of his alleged employment from which he died and his dependents sued to recover compensation. Plaintiff's petition disclosed that deceased did not have a health certificate during the period of time involved and sought to relieve such necessity by allegations that deceased was not affected by any contagious disease, and that all said facts were known to the insurance carrier prior to the date on which it thereafter audited the employer's payrolls. The trial court sustained a demurrer to the petition; Court of Civil Appeals reversed and remanded the case and Commission of Appeals reversed that holding and affirmed the judgment of the trial court. Obviously the insurance carrier was relieved of affirmatively pleading the illegality of the contract of compensation insurance because plaintiff had disclosed it in her petition, resulting in the demurrer being sustained.

In 71 C.J. 398, § 127, based upon decisions from other jurisdictions, this is said: "Where fewer than the specified number of workmen are employed, an injured employee, or his dependents, has no right to recover against the employer under the Compensation Act."

Under the record before us, we have concluded that another principle of law is controlling here. It is this: Appellee had pleaded her case under allegations sufficient to entitle her to rely upon the policy, and that the employer was a subscriber, and that appellant was the carrier of compensation insurance; she proved all the necessary facts to establish her allegations, insofar as this point is concerned. Appellant conceded upon the trial that the employer possessed the policy in which it was the carrier. Appellant's pleadings were only a general denial and certain special pleas, such as that it had not issued a life insurance nor health insurance policy, but only a policy of workmen's compensation insurance which only gives protection when a workman receives an accidental injury from which he dies or sustains injury; and that no accidental injury was sustained by the deceased. Under appellee's pleadings, if appellant had contended it was not the carrier of workmen's compensation insurance under the policy, it would of necessity have been required to plead under oath that it was not such. Rule 93, sec. (n), subsection 6, Rules Texas Civil Procedure. As stated, it did not make such denial but admitted that it had issued the policy. The contract of insurance sued on was either legal or illegal. Referable to the point under consideration, its legality depended upon the employer having three or more employees. Before appellant could prove its illegality, it was incumbent upon it to specially plead its illegality. Under Rule 94, Rules of Texas Civil Procedure, if a party desires to defend as against a preceding pleading where recovery is sought on a contract, he must set forth affirmatively the "illegality" of the contract or many other enumerated matters constituting an avoidance or affirmative defenses. Appellant failed in this respect. When appellant offered testimony that the employer had never had more than two employees and had not pleaded the illegality of the policy contract, the court should have sustained appellee's objection thereto because of the lack of pleadings. The testimony therefore was incompetent and would not support a judgment on an instructed verdict. Starr et al. v. Ferguson, 140 Tex. 80, 166 S.W.2d 130, and cases cited.

It is hardly necessary to state reasons for such a rule of pleading, but it is obvious that if the insurance carrier had pleaded the illegality of the policy because of a lack of the necessary employees to entitle the employer to such protection, the plaintiff would have been put upon notice thereof and afforded an opportunity to ascertain the real facts and thus determine if she would further prosecute her case by amendments if there had been facts, not otherwise disclosed, entitling her to a recovery.

We have unduly extended this discussion, but it may be justified in being of some aid to the court upon another trial.

For the error in receiving the incomplete verdict and entering judgment thereon, hereinabove pointed out, the judgment is reversed and the cause remanded.

## On Motion for Rehearing.

McDONALD, Chief Justice.

Both appellant and appellees have filed motions for rehearing, the appellant contending that we should have rendered judgment here in its favor. Mr. Justice

BROWN and the writer have reached the conclusion that appellant's motion in such respect should be granted.

It is not without reluctance that we conclude that appellees should be denied a recovery because of the undisputed showing in the evidence that the employer in this case had never at any time had more than two employees.

Article 8306, sec. 2, Revised Civil Statutes, reads as follows: "The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm laborers, ranch laborers, nor to employés of any firm, person or corporation having in his or their employ less than three employés, nor to the employés of any person, firm or corporation operating any steam, electric, street, or interurban railway as a common carrier. Any employer of three or more employés at the time of becoming a subscriber shall remain a subscriber subject to all the rights, liabilities, duties and exemptions of such, notwithstanding after having become a subscriber the number of employés may at times be less than three."

We have not been cited to nor have we found a Texas case upon the question whether a recovery will be denied where the employer has less than three employees, even though a policy of compensation insurance had been issued. In other jurisdictions it appears to have been held that the employer must have not less than the minimum number of employees set out in the statute in order to entitle the injured employee to prosecute a claim for compensation. See cases cited in footnotes in 71 Corpus Juris, Workmen's Compensation, §§ 127, 128, and 136, and in the annotation in 81 A.L.R. 1222. It was held in Pine v. State Industrial Commission, 108 Okl. 185, 235 P. 617, that the question was one of jurisdiction which could be raised at any time, even on appeal.

In Hill v. Georgia Casualty Co., Tex. Com.App., 45 S.W.2d 566, it was held that under article 8306, sec. 2, above quoted, farm and ranch laborers were excepted from the operation of the Workmen's Compensation Law, and could not recover compensation, although the employer had been issued a policy which apparently was intended to cover the employee in question. Citing the Inabnit case, infra, it was held that employees who did not fall within the operation of the law could not be brought under its operation by agreement. The case is followed in Holmes v. Travelers Ins. Co., Tex.Civ.App., 148 S.W.2d 270, writ refused.

In Southern Surety Co. v. Inabnit, 119 Tex. 67, 24 S.W.2d 375, 377, the claimant was acting as a receiver, appointed by a court, for an oil company. The court held that he could not, in his capacity as receiver, be regarded as an employee within the terms of the Workmen's Compensation Law. The court also considered the question of estoppel, based upon the theory that the insurer had collected premiums with the knowledge that Inabnit was carried on the payroll of the subscriber as an employee. The court said: "A plea of estoppel cannot be used for the purpose of enabling the Industrial Accident Board to acquire jurisdiction over a case where no jurisdiction in fact exists. This being an appeal from the award of the Industrial Accident Board, the jurisdiction of the district court to hear the case de novo depended upon the jurisdiction of the Industrial Accident Board. The latter tribunal is one of limited powers. It is only authorized under the act creating it to award compensation, where it is shown that the person seeking compensation is an employee within the contemplation of such act. As Inabnit was not such employee, the Industrial Accident Board had no jurisdiction to enter any award requiring the payment of compensation. Its jurisdiction could not be conferred by any agreement of the parties or by an estoppel based thereon. To so hold would enable employers and insurance companies to protect classes of persons to whom the Legislature has not seen fit to extend the benefits of the Workmen's Compensation Law."

 The right to recover workmen's compensation benefits exists solely by reason of the statute. A claimant who pursues this statutory remedy must bring himself and his case within the limitations of the statute. The employee must be shown to have been of the class intended to be benefited by the statute. The majority of the court believe that the provisions of section 2 of article 8306 are not so limited in their scope as merely to provide defenses which the insurer must affirmatively plead. We believe, under the holding in Hill v. Georgia Casualty Co., Tex.Com.App., 45 S.W.2d 566, supra, that the persons named in section 2 are excluded from prosecuting a claim for workmen's compensation, or, to

use the wording of the statute, that the provisions of the Workmen's Compensation Law do not apply to their cases. It would follow, we think, that if it should at any stage of the proceedings appear to the court that the employee was one of those named in section 2 that the court should decline to grant the claimant any relief under the terms of the Workmen's Compensation Law. Whether a claimant in such situation might have some sort of suit on the contract of insurance, as distinguished from a claim for compensation which must first be presented to the Industrial Accident Board, we do not undertake to decide because we do not have that sort of case here.

 The majority of the court find themselves unable to agree with the holding heretofore made that the case is governed by Rule 94, which requires a defendant to plead illegality as a defense. As we see the case, we are not confronted with the question of legality or illegality of the contract, because we do not reach that point. It appearing without dispute that the employee was one of those named in section 2, it must be held that the claimants are precluded by the terms of that section from pursuing the statutory remedy, so that it becomes immaterial whether there was a contract of insurance, or whether it was legal or illegal. According to the opinions in the Hill and Inabnit cases, the employer and the insurer could not by their agreement confer authority upon the court to grant relief under the Workmen's Compensation Law where such authority did not in fact exist.

 In their petition the claimants alleged that the employer had three or more employees. The insurer's answer contained a general denial. Such allegations did not come within Rule 93, and particularly section (n) of Rule 93. Therefore, the general denial put such matters in issue. Rule 92.

The members of the court are still in agreement with all that is said in the opinion heretofore handed down under the signature of Mr. Justice SPEER, except as above indicated; and we withdraw only so much of such opinion as holds that it was necessary for the insurer to plead affirmatively the matters above discussed. Mr. Justice SPEER adheres to the views expressed in the former opinion.

It appearing that there is an insurmountable obstacle in the way of a recovery by the claimants, it would avail nothing to remand the case for another trial.

Our former judgment is set aside in so far as it ordered the cause remanded for another trial, and judgment is here rendered for appellant.

SPEER, J., dissenting.

SPEER, Justice (dissenting).

I feel impelled to dissent from the conclusions reached and expressed by the majority in granting the motion of appellant and reversing and rendering the judgment of the trial court as indicated.

I believe that the rule giving a liberal construction to the Workmen's Compensation Act by the Supreme Court in Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, and the numerous decisions following that case and the holding in Federal Underwriters Exchange v. Pugh et al., 141 Tex. 539, 174 S.W.2d 598, relative to jurisdiction of a district court in a county other than the the county in which the injury occurred, when transferred to such county by agreement of the parties, and the necessity of giving effect to Rule 94, Rules Texas Civil Procedure, require that this cause be reversed and remanded rather than reversed and rendered for appellant, as indicated by the majority opinion.

From the order entered by the Industrial Accident Board copied in the petition for jurisdictional purposes, it is obvious that the question of jurisdiction of the Board for lack of three or more employees by the employer was not presented to nor passed upon by the Board. It is equally clear to me that both the employer and the carrier knew at that time what the real facts were in this regard. As pointed out in the original opinion the issue was injected into the case at the conclusion of taking the testimony and no opportunity was given appellee to ascertain what, if any, facts existed, which under the statute referred to would affect the validity of the policy of insurance.

I believe that Rule 94, supra, was promulgated to meet such a condition as is presented in this case—that is, if a defendant expects to resist liability under a pleaded contract on the grounds of the invalidity or illegality of such contract, he is required

to plead it and thus fairly present the issue for determination. I adhere to the conclusions expressed in the original opinion, and believe that both motions for rehearing should be overruled.

### On Second Motion for Rehearing.

### McDONALD, Chief Justice.

In their second motion for rehearing appellees contend that we erred in holding that they were precluded from recovering compensation because the employer had never had as many as three employees. Appellees argue that section 2 of article 8306 applies only to damage suits against an employer, and not to suits against an insurance carrier to recover workmen's compensation.

It was with reluctance that we held that section 2 of article 8306 applied to this case. But, however logical might be the contention made by appellees, we are faced with the holding in Hill v. Georgia Casualty Co., Tex.Com.App., 45 S.W.2d 566, which is clearly predicated upon the theory that section 2 of article 8306 applies to compensation suits, and also with the expressions of approval of such holding which are to be found in the opinions in Guerrero v. United States Fidelity & Casualty Co., 128 Tex. 407, 98 S.W.2d 796; Maryland Casualty Co. v. Dobbs, 128 Tex. 547, 100 S.W.2d 349; and Holmes v. Travelers Ins. Co., Tex.Civ.App., 148 S.W. 2d 270, writ of error refused. Those cases all appear to rely on the holding in Gordon v. Buster, 113 Tex. 382, 257 S.W. 220, without giving consideration to the fact that Gordon v. Buster was a damage suit against an employer who did not carry compensation, and was not a suit against an insurance carrier to recover workmen's compensation.

Section 1 of article 8306 obviously applies to damage suits, and not to compensation suits, and it seems to us that it might with good reason be thought that section 2 is only an exception to the general enactment contained in section 1. Section 1 takes away certain common law defenses in damage suits brought by an employee; and section 2, by way of exception, preserves such common law defenses to the employers of farm hands, the employers of less than three employees, and the other employers therein named.

The pronouncements of the Supreme Court, in the cases above cited, are to the effect that section 2 of article 8306 also applies to suits for workmen's compensation.

As is shown by the opinions heretofore rendered by us, we have in the case also a question of pleading. It is the belief of Mr. Justice SPEER that the defense in question is not available to the insurance carrier because it was not raised by special plea.

After we handed down our opinion reversing and rendering the cause in favor of the insurance carrier, its attorneys filed in this court a motion to supplement the record. The purpose of the motion is to establish that the defense in question was raised in a trial amendment filed by the insurance carrier. Attached to the motion is a copy of a pleading filed by the insurance carrier, certified by the clerk of the trial court. According to a marginal notation the pleading (which sufficiently alleges that the employer at all times material had less than three employees) was filed fourteen days after the entry of final judgment in the court below. Accompanying the motion is a statement, signed by the official court reporter, to the effect that the insurance carrier's attorney dictated the trial amendment to the court reporter during the trial.

In order that the full record may be available in the event application should be made to the Supreme Court for a writ of error, we have ordered the motion and its accompanying exhibits filed, but we are of opinion that we cannot consider the trial amendment for any purpose. We do not believe that the statement of the court reporter can be considered by us, because, if for no other reason, a statement of facts must be agreed to by both parties, or else approved by the trial judge; neither of which has been done here. The copy of the trial amendment which is certified by the clerk of the trial court shows on its face that it was filed two weeks after the trial was concluded, and there is nothing in the certificate of the clerk to the contrary. It has been held that a pleading dictated to the court reporter, but not written up and filed until after the term of court had ended, could not be considered. Copeland v. Williams, Tex.Civ.App., 282 S.W. 261. In the case before us we do not have a proper showing that the pleading was dictated in open court, even if we should be inclined to consider such a procedure a sufficient compliance with the rule that pleadings must be in writing, signed, and

filed with the clerk of the court. Rules 45, 74. A mere statement from the court reporter, not agreed to by the parties, nor approved by the court, is insufficient to constitute a proper transcript of the proceedings purporting to be described therein. Rule 377.

Appellees' motion for rehearing is overruled.

SPEER, J., dissenting in part.

SPEER, Justice (dissenting in part).

I am not in accord with the contentions of appellee relating to the effect of section 2 of article 8306, R.C.S., nor with the reluctance of its application to this case indicated by the majority in the opinion overruling the second motion for rehearing. If all other rules of construction were set aside, the language used in sections 1 and 2 of article 8306 might be given the meaning sought to be applied by appellees. Whether there is substantial merit in the contention or not, I think the matter is foreclosed by the numerous decisions of our Supreme Court and those to which it has given sanction, in holding that section 2 is applicable to workmen's compensation cases. I have not always readily agreed to the disposition of cases made by our Supreme Court, nor to its constructions of statutory provisions, but whether I believe them correct or not is of no concern to our jurisprudence. That court's construction and application of a statute become the law until changed by the same court or the provision is repealed or amended.

I concur in the disposition made by the majority of the motion to amend the transcript as disclosed by the foregoing conclusions as well also in overruling the motion for rehearing, only, insofar as they declined to affirm the judgment of the trial court.

I want to add an additional reason to what I have previously said relative to the necessity of a pleading by the insurance carrier in this case, setting up affirmatively, and assuming the burden of proving that the employer held no legal contract of workmen's compensation insurance, under which plaintiff could recover, based upon the improperly admitted testimony that the employer had less than three employees at all times.

Our Workmen's Compensation Law is embraced within Title 130, articles 8306 to 8309a, Vernon's Annotated Texas Civil Statutes, along with the many sections and subdivisions of each of those articles. Within the body of the whole Act we find our authority for compensation to workmen who are injured by accidental means while in the course of their employment. This compensation extends to the legal beneficiaries when the injury results in death to the employee. The exception found in section 2 of article 8306 is not in the body of the law which creates the right of action for compensation; but is a proviso or exception set apart to itself, independently of the language used to create the right to compensation. In other words, if an exception or exemption from liability is found in the enacting clause or in the law which creates the right of action, it must be negatived by the plaintiff in his pleadings and he has the burden of proof to establish it as a fact, but if the exception, proviso, or exemption from liability is found, as in the instant case, in a subsequent and separate section of the Act, it becomes a matter of defense and must be pleaded and proved by the defendant. The fact that plaintiff in this case alleged that the employer had three or more employees was unnecessary and may be treated as surplusage.

Apparently, there is a conflict of authorities in other jurisdictions, but the above rule of application is the one adopted in Texas and many of the other states. See 41 Amer.Jur. § 94; 130 A.L.R.Anno. pp. 440, 452 to 457; Rule 94, Texas Rules Civil Procedure; Lane v. Bell, 53 Tex. Civ.App. 213, 115 S.W. 918, writ refused; Spence v. Fenchler, 107 Tex. 443, 180 S. W. 597 (607); Quanah A. & P. R. Co. v. Bone, Tex.Civ.App., 199 S.W. 332 (336); Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Com.App., 7 S.W.2d 521; and Fidelity Union Casualty Co. v. Carey et al., Tex. Com.App., 55 S.W.2d 795. Other states holding to the same principle are Alabama, Georgia, Indiana, Kentucky, Mississippi, New Jersey, Ohio, Oklahoma and Oregon.

I have a very profound respect for the opinions of my associates, but under the facts and circumstances revealed by this record and the cited authorities, I am unwilling to assent to a rendition of this judgment in favor of the insurance carrier and not give plaintiff an opportunity to meet, if she can, the fact that she is to be deprived of a recovery because the employer said he had never had more than two employees, when no such affirmative

defense had been pleaded by the carrier. The admission of such testimony over plaintiff's objections was not harmless error. I am fully convinced that the case should be remanded to the trial court rather than rendered, as ordered by the majority.