**QUESADA et al. v. GRAHAM ICE CREAM CO. et al.**

**No. 9670.**

Court of Civil Appeals of Texas. Austin.

Nov. 19, 1947.

O. B. Garcia and H. A. Garcia, both of Brownsville, for appellants.

Taylor, Cox, Wagner & Adams, of Brownsville, John Q. Adams and Carter & Stiernberg, all of Harlingen, for appellees.

McCLENDON, Chief Justice.

The Quesadas (surviving wife and children of Francisco Quesada, deceased) sued the Company (Graham Ice Cream Company, a copartnership) for damages re-

sulting from the death of Quesada in a head-on collision upon a public highway between a ½ ton truck he owned and was driving and a ½ ton truck owned by defendants and driven by their employee Rich, the result (allegedly) of the negligence of the latter. A special issue jury verdict found Quesada guilty of contributory negligence in each of the following two respects: 1) in driving "on his left hand side of the highway at a time when the left hand side of said highway was not clear and unobstructed for a distance of at least fifty yards ahead of him"; and 2) in failing "to keep a proper lookout for other traffic on said highway." Upon this verdict, judgment was rendered for defendants. The Quesadas have appealed.

Refusal of the court to permit the Quesadas to show in cross-examination of Rich, a witness for the defense, that there was then pending against him a criminal complaint and information charging him with negligent homicide for the death of Quesada is the only ground of error urged. The evidence was offered solely as showing the interest of the witness, and not for impeachment purposes. The case is ably briefed by counsel for both parties, evidencing very thorough research upon the specific question presented.

■ It is conceded that the established rule in this state, which is in accord with that generally recognized in other American jurisdictions, is that in a civil suit evidence of a pending indictment, information or complaint, charging a witness with a criminal offense, is not admissible for the purpose of impeachment. The leading case in this state is Missouri, K. & T. R. Co. of Texas v. Creason, 101 Tex. 335, 107 S.W. 527, which has been repeatedly and consistently followed.

■ Adjudication seems quite rare upon the specific question presented here: whether it is permissible, upon the issue of bias of the witness, to show that a criminal charge is pending against him growing out of the transaction upon which the case is predicated, as evidencing his interest in the outcome of the case in its bearing upon the criminal charge. The point seems not to have been decided in this state. We con-

sider briefly the authorities from other jurisdictions.

A practically all fours case with that at bar, by the Supreme Court of Missouri, Division 2, is Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791, 795, 149 A.L.R. 929, in which admissibility of the evidence for the specific purpose of showing the interest of the witness was denied. There was a concurring opinion by one of the Justices upon the ground that the criminal charge against the witness (driving while intoxicated) "could be sustained by mere proof of his intoxication anywhere on the fatal trip, even before the collision and without any showing of negligence." The majority took no such narrow view of the issue presented; but in a well considered opinion, giving a thorough review of the authorities, held that the evidence was not admissible to show bias or interest of the witness. Motion to transfer to the court en banc was denied; from which we infer that the remaining eight Justices concurred in the opinion of the majority of the division.

The Supreme Court of Vermont reached a like conclusion in Paul v. Drown, 108 Vt. 458, 189 A. 144, 146, 109 A.L.R. 1085, wherein the court said: "It must have been entirely clear to the cross-examining counsel that the offered evidence concerning Marcou's arrest and pending prosecution had no legal relevancy to the issues before the court. It was not admissible to show that the defendant was not negligent or that Marcou's negligence was the proximate cause of the accident. Neither could it have been received in impeachment of the witness, because there had been no conviction of the offense charged against him."

In Socony v. Marvin, 313 Mich. 528, 21 N.W.2d 841, 844, the Supreme Court of Michigan held admissible evidence that the driver was given a traffic violation ticket and paid a fine to the justice court; the court saying: "Clearly, defendant understood that he was paying a fine and on the trial plaintiff was entitled to show such act *on the theory that it was inconsistent with the testimony of defendant as to how and why the accident happened.*" (Emphasis added.)

In Meador v. Insurance Co., 5 Cir., 53 F.2d 731, 732, it was held that defendant

could not complain of the trial court's ruling "because the witness had already testified without objection that there was an arrest and a hearing on account of leaving the truck on the highway, and no added admission was elicited by the question objected to."

In the Kentucky case of Chesapeake & O. R. Co. v. Pittman, 283 Ky. 63, 138 S.W. 2d 962, rejection of evidence that a material witness for the plaintiff was under indictment for arson (not connected with the case then at bar) was held error where the attorney for plaintiff was also the prosecuting attorney, the court holding that it was bias and a state of mind on the part of the witness that was sought to be shown by evidence of the indictment.

None of these cases is here in point in principle, except those from Missouri and Vermont, which support the view that the evidence is not admissible. We are in accord with this view.

The basis upon which an unproved criminal charge is not admissible in a civil case to impeach a witness is stated in Coyne v. United States, 5 Cir., 246 F. 120, 121, quoted with approval in the above Holden case: "The fact that an unproven charge has been made against one has no logical tendency to prove that he has been guilty of an offense, *or to impair the credibility of his testimony.* An indictment is a mere accusation, and raises no presumption of guilt. On the contrary, the indicted person is presumed to be innocent until his guilt is established, by legal evidence beyond a reasonable doubt, in a court of competent jurisdiction. It does not seem to be fairly open to question that he is deprived of the benefit of this presumption by the admission against him of evidence of the fact that a charge, based upon ex parte evidence, which, when combated on a trial, may turn out to be utterly untrustworthy, has been made against him. It is not uncommon for entirely innocent persons to be indicted. It would be a gross injustice to permit the fact of such a making of a charge to be used to the prejudice of a person against whom the unproved charge is made. The evidence admitted over objections made did not any more shed light on the question of the credibility of the defendant's testimony

than it did upon the question of his guilt or innocence of the offense for which he was on trial."

The same reasoning applies to the attempt to discredit a witness by showing that a criminal charge has been made against him growing out of the same transaction to which his testimony relates. His interest in the occurrence is always apparent from the fact of his involvement as actor therein; whether as defendant or as agent or employee of the defendant in the suit in which he testifies. The suit itself is predicated upon his own culpability; and his interest to shield himself from the charge thereof is apparent regardless of the criminal charge against him. To give additional weight to this palable interest by the introduction of a criminal charge, would, we think, unduly serve to poison the minds of the jury against the witness through purely hearsay testimony. It would also offer an incentive to the adversely interested party to make or procure the filing of a criminal charge. Competent evidence of the facts which form the basis of the criminal charge is of course admissible, but the charge is not proof of the facts or of the conclusions to be drawn therefrom; it is but the assertion or opinion of some one that a crime has been committed. Whatever presumption of interest may be drawn from the pendency of a criminal charge, in excess of the interest to be presumed from the fact of involvement in the transaction in which he is charged with culpability and may be subject to criminal prosecution, though not presently charged therewith, is outweighed by the consideration that the party offering his testimony is entitled to have it considered in the setting in which it appears as shown by the relation of the witness to the transaction and the parties to the suit, untrammeled by the purely hearsay evidence of a pending criminal charge.

■■ While we rest our decision upon the holding that the evidence was not admissible, we think it proper to add that the record warrants a fair, if not conclusive, deduction that exclusion of the evidence was harmless. Rich and Graham, one of his employer defendants who was riding with him in the truck, were the only living eyewitnesses to the collision. Each of

them testified that the collision happened about 4 p. m. of a cloudy day on a paved highway about 16 ft. wide, the center being marked by a black stripe. It had been raining and the shoulder (about 4 ft. wide and about 3 or 4 in. below the surface of the paving) was muddy. The highway was straight at that point and they discovered Quesada's truck when it was about 75 yards away. Each truck was traveling at about 40 miles per hour. The left hind wheel of Quesada's truck extended a foot or two past the center line of the highway, and in Rich's efforts to give clearance to Quesada's truck, the rear right wheel of his truck slid off the paving onto the muddy shoulder, and in his endeavor to get it back on the paving the front end of his truck was thrown to his left and the impact occurred. The only other witness whose testimony had bearing on the way the collision happened was the State Highway patrolman, who got to the scene some 30 or 40 minutes after the collision. He found no eyewitness from whom he could get a statement, Quesada being in a dying condition and the other two witnesses, each of whom had been injured, though not seriously, having left the scene. He made an examination of the situation as he found it, and took four pictures of the scene from different angles. His testimony showed there were no marks on the paving made by the tires of the Quesada truck. There were heavy skid marks made by defendants' truck, beginning about 55 or 60 feet from the point of impact. These did not show that any wheel of that truck left the paving, they veered to the left and crossed the center of the paving for about 1½ feet where they stopped at the point of impact. They became much wider as they approached that point. The impact was evidently quite heavy. Defendants' truck was left standing with its front wheels in the ditch on the right-hand side of the road, its rear wheels resting on the paving some feet from the center. Its whole front was smashed in. The Quesada truck was in the ditch on the opposite side of the road, headed in the direction it was traveling. Marks showed it had been skidded sideways off the road from the point of impact. It was struck "about the left rear

wheel or just behind it." The jury found (in addition to the two items of Quesada's negligence) that: neither car was traveling at an excessive rate of speed; Rich did not fail to keep a proper lookout; Rich failed to give half the road to Quesada, which was a proximate cause of the collision (no issue was submitted as to whether such failure was negligence); the left hind wheel of defendants' truck had not "left the paved portion of the highway prior to the time that the driver of said truck undertook to turn to his left away from the right hand edge of said highway"; immediately before and at the time of the collision Rich was "acting under an emergency." It is quite apparent that the jury did not believe the testimony of Rich or Graham as to how the collision happened, but constructed their own theory thereof from the physical facts shown by the testimony of the traffic officer and the pictures he took. There was a specific finding that the right rear wheel of defendants' truck did not leave the pavement, a fact testified to by both Rich and Graham in emphatic terms. The skid marks showed an application of the brakes by Rich, beginning 55 or 60 feet from the point of impact, evidencing discovery of a dangerous situation when Quesada's truck was over 100 feet away, which could only arise from the latter being on the wrong side of the road. The course of these skid marks from that point, their widening and turning to the left across the center of the paving, strongly, if not conclusively, indicated that Rich was acting under some character of emergency (not one created by his right rear wheel dropping off the paving, as testified to by him and Graham). Absence of marks from Quesada's truck up to the point of impact indicated he did not discover the approaching truck in time to apply his brakes, and consequently was not keeping a proper lookout. We think it apparent that evidence that Rich was under a criminal charge in connection with Quesada's death would have added no whit to the lack of credence the jury gave to his testimony.

The trial court's judgment is affirmed.

Affirmed.