### SHERWOOD v. MURRAY.
#### No. 4750.

Court of Civil Appeals of Texas. El Paso.
July 19, 1950.

Rehearing Denied July 26, 1950.

880

Cunningham & Ward and O. L. Malone, all of El Paso, for appellant.

Jones, Hardie, Grambling & Howell and John A. Grambling, all of El Paso, for appellee.

McGILL, Justice.

This is a suit for damages for personal injuries growing out of a collision between two automobiles, which occurred at the intersection of Blacker and Stanton Streets in the city of El Paso on December 17, 1947. Appellant was plaintiff and appellee was defendant in the trial court.

Stanton Street runs approximately north and south, and Blacker Street runs approximately east and west, intersecting Stanton Street at an approximate right angle. Plaintiff was a guest in the Dodge coupe automobile being driven by one Al Hoffman. Just prior to the collision this car proceeded east on Blacker Street. The defendant Murray was driving his own Chevrolet car south on Stanton Street. Stanton Street is a through street and there was a stop sign some eight to twelve feet west of the curb on Stanton Street on the south side of Blacker Street.

The case was tried to a jury and their findings absolved the defendant from any act of negligence. The jury found that the driver of the automobile in which the plaintiff was riding failed to stop the automobile before entering the intersection where the accident occurred; that such failure was negligence and the sole proxi-mate cause of the accident. Conditioned on a negative answer to any of these issues, issues were submitted inquiring whether at the time the automobile in which plaintiff was riding entered the intersection defendant's automobile was approaching said intersection so closely as to constitute an immediate hazard; whether the driver of the automobile in which plaintiff was riding as he entered the intersection did not proceed cautiously nor yield the right of way to defendant's automobile, and whether his failure to proceed cautiously and yield the right of way was negligence, and whether such negligence was the sole proximate cause of the accident. The jury failed to answer any of these questions except the one inquiring if such negligence was the sole proximate cause of the accident, which they answered in the affirmative. In answer to an issue inquiring as to damages which would reasonably compensate the plaintiff for the injuries suffered by him the jury answered "none". The court rendered judgment on the verdict that plaintiff take nothing and that the defendant go hence with his costs.

Appellant has presented and briefed nine points. In general they complain of improper argument and conduct of appellee's attorneys and of the court's failure to admit certain testimony. We think a brief summary of the points will be helpful in our discussion and disposition of the appeal:

The witness Al Hoffman, the driver of the automobile in which plaintiff was riding, had testified that he did stop at the stop sign on Blacker Street before entering Stanton Street. On cross-examination counsel asked him: "As a matter of fact, you forfeited a bond you put up in the police station, didn't you?" The court sustained the objection of plaintiff's counsel to such question, after which one of defendant's counsel stated: "Well, its an admission of guilt on his part. Its an admission of guilt." Thereupon plaintiff's attorney moved to exclude such statement and asked the court to charge the jury that such statement was not correct, after which defendant's counsel stated: "Your

honor, we really thought that was bearing because he did forfeit his bond and if he had gone down and stood trial he wouldn't have thought he was guilty." Whereupon plaintiff's counsel objected to such statement by defendant's counsel before the jury on the ground that it was not the law and not a fact and had nothing to do with the bearing of this case and the court thereupon stated: "Well, gentlemen, I instruct you in the exact words of Mr. Cunningham." (One of plaintiff's counsel.) It was a fact that Hoffman did put up a sum of money as a bond and forfeited it by failure to appear. After all the evidence was concluded and before the court had given his charge plaintiff requested a mistrial because of the above proceedings which was refused.

Defendant's counsel also on cross-examination asked the witness Hoffman if he had received a letter from the defendant a short time after the accident, telling him about the damage to his car. Plaintiff's counsel objected on the ground that such question was immaterial and irrelevant, whereupon defendant's counsel stated "We are going to show the man would make settlement" whereupon plaintiff's counsel objected to such statement on the ground that it was highly improper and irrelevant, and the court remarked "It certainly is."

Thereafter, still in the presence of the jury, the following took place:

"Q. Now, Mr. Hoffman, I will ask you if you did get a letter from Mr. * * *, the Defendant in this case, Mr. Murray, a short time after the accident about this accident, setting forth the damage he had suffered and asked you to do something about it? A. Yes, sir, I did get a letter to that extent.

"Q. And I will ask you if you called him up, is that right? A. I believe I telephoned * * * I think that is correct. I believe I telephoned him * * *.

"Q. And said 'you would take care of it?'

"Mr. Cunningham: We object to that, Your Honor.

"A. Well, I never said that, no, sir."

The following was elicited from the witness Hoffman in the absence of the jury: "It is pretty hazy as to just exactly what he told me in his letter and what I told him on the telephone. As I remember the contents, why, Mr. Murray informed me that his car was damaged and couldn't use it for his business, and he wanted to know if I was going to take care of what happened, and I said 'I don't know'. 'I knew how my car was going to be taken care of, but I would endeavor to find out just how the insurance did work. I don't know * * *, but I would sure endeavor to find out'."

Plaintiff excepted to the court's refusal to permit him to introduce this answer of the witness Hoffman before the jury.

In his opening argument to the jury one of defendant's counsel stated: "We have first the plaintiff, Mr. Sherwood. He is from New York City. He is a man of considerable means, as the evidence has shown he is chief stockholder of the Frank Sherwood Company, Inc." Plaintiff's counsel objected to the statement on the ground that defendant's counsel was trying to create prejudice in the minds of the jury against the plaintiff and was appealing to one as being a man of wealth, and asked the court to instruct the jury not to consider such statement for any purpose. The court did not give such instruction but merely stated that he would make a note of the exception. During his opening argument defendant's counsel also stated: "We note also that he, Sherwood, did not see fit to have an El Paso doctor to take care of him, he decided to go to New York." Plaintiff's counsel objected to such statement because it was a matter of trying to prejudice the jury, and asked that such statement be excluded, but the court failed to instruct the jury and merely stated: "I will make a note of these." During his closing argument, Mr. Allen Grambling, one of the attorneys for the defendant, stated: "This is an effort on the part of Mr. Sherwood here to lift fifty thousand dollars out of Mr. Murray's pocket, it is not a trading proposition." Plaintiff's counsel objected to such state-

ment, but the court refused to instruct the jury not to consider it. Also during his closing argument defendant's counsel stated: "As I say, gentlemen, he was between the Devil and the deep blue sea when I asked him if he had a 'shofur'. If he had said he had a 'shofur' you know he had lots of money but I knew he was between the Devil and the deep blue sea, however he answered that question, wasn't he, if he had a 'shofur' he wasn't short of money." Plaintiff's counsel objected to such statements for the reason that defendant's counsel was still trying to bring in prejudice in the case of bearing wealth, and moved the court to exclude it, which the court failed and refused to do, and merely stated: "I will make a note of it." The court refused to permit Doctors Leo Arthur Green and Louis A. Price to testify by deposition as to their charges for necessary medical services rendered to plaintiff as the result of the accident, and that such charges were reasonable, and as to charges for nurses' bills, nurses' meals and hospital bills rendered to plaintiff in New York City, and the reasonableness of such charges and such refusal is assigned as a point of error.

■ The rule governing misconduct of counsel is different than Rule 327, Rules of Civil Procedure, relating to misconduct of the jury, which places the burden on the complaining party to show that injury probably resulted. The rule applicable to misconduct of counsel as enunciated by the Supreme Court in Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469, is still the law. See Tex. Emp. Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, loc. cit. 788 (7, 8). We quote: " 'It is not the policy of the law to impose the burden of showing harmless error upon the person whose rights have been transgressed. That burden rests upon the person in whose favor the transgression was made. The rule has been announced, and is adhered to by this court, that, when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment, as a matter of law, if, under all the circumstances there is any reasonable doubt of its harmful

effect, or unless it affirmatively appears no prejudice resulted.' "

Under this rule, while we might not reverse this case because of the misconduct complained of in any one of appellant's points, we have concluded that the misconduct complained of in all such points, when considered in its entirety does require a reversal. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

■■ Evidence that Hoffman had forfeited a bond he had put up at the police station was inadmissible for any purpose. It may be assumed that the question propounded to Hoffman implied that he had been charged in the police court with failure to stop at the stop sign before entering the intersection of Blacker and Stanton Streets, had given bond on such charge and had forfeited such bond. Certainly it was highly improper for counsel to state in the presence of the jury that Hoffman did forfeit such bond. This was unsworn testimony by appellee's counsel. By the great weight of authority even evidence of a conviction in a criminal prosecution for the very acts which constitute the negligence sought to be established in a civil suit as the basis of liability is not admissible unless such conviction is based on a plea of guilty. See Annotations, 31 A.L.R. 262; 57 A.L.R. 504; 80 A.L.R. 1145. There are a few authorities holding such evidence admissible to substantiate evidence as to the defendant's action. See 9 Blashfield Cyc. of Automobile Law and Procedure, p. 641, Sec. 6196. However, we have found no authority holding evidence of such conviction admissible for the purpose of impeaching the witness. It has been held that in a damage suit for wrongful death it is not permissible to show on cross-examination that a witness had pending against him a criminal complaint charging him with negligent homicide of the deceased whose alleged wrongful death is the matter in controversy. Quesada v. Graham Ice Cream Co., Tex. Civ.App., 207 S.W.2d 120. Forfeiture of a bond in a police court may be due to many reasons other than the admission of the guilt of the accused, such as necessary absence from the city, urgency of business,

or merely a desire to follow the line of least resistance. The statement by counsel that Hoffman had forfeited such bond without any explanation necessarily implied that he had failed to stop before entering the intersection, which was the crucial issue in the case.

Likewise counsel's statement in the presence of the jury that "We are going to show that the man would make settlement" under the circumstances in which such statement was made would logically leave in the minds of the jurors the thought that Hoffman had agreed to pay defendant Murray for the damage to his car which resulted from the collision, and thereby admitted that he (Hoffman) was to blame for the accident. This statement subserved no legitimate purpose. The witness was adverse and the only issue was as to the propriety of the question on cross-examination. It was not incumbent on appellee to show what he expected the answer to be.

The argument complained of presents even more serious error. Reference to the plaintiff Sherwood as "a man of considerable means * * * he is chief stockholder of the Frank Sherwood Company, Inc.," and to the dilemma in which Sherwood was placed by counsel's asking him if he had a "shofur" because if he had said he had a "shofur" the jury would know he had lots of money, could have no purpose other than to impress the jury that the plaintiff was a wealthy man. It is true that in the argument complained of no reference is made to the defendant Murray and no attempt is made to compare his financial condition with that of plaintiff. However, if counsel's argument be considered in its entirety, the argument complained of could well have had this effect. The argument that plaintiff was endeavoring to "lift fifty thousand dollars out of defendant's pocket" has already been noted. Later counsel, in his closing argument, said: "They say that Fifty-Thousand Dollars is a mere sum of—just a mere sum of Fifty-Thousand Dollars. I say, gentlemen, they ask for Fifty-Thousand Dollars. They would put that judgment on this Defendant, here. He would be carrying this for the rest of his life. That is what they are seeking to do in this case. Then Mr. Murray will have a—Mr. Sherwood will have another good business. He would have a remittance man down here in El Paso paying him off on a Fifty-Thousand Dollar judgment."

In view of this language we think the argument complained of is susceptible of an appeal to the jury not to give this plaintiff, a man of considerable means, the chief stockholder in the Frank Sherwood Company, $50,000.00 damages to be paid off by this defendant during the rest of defendant Murray's life. Inferentially defendant's poor financial condition was contrasted and compared with plaintiff's wealthy condition. Such argument has been repeatedly condemned by our courts. Highway Ins. Underwriters v. Le Beau, Tex. Civ.App., 184 S.W.2d 671, loc. cit. 678 (12), Reversed on other grounds 143 Tex. 589, 187 S.W.2d 73. This is so even though the comparative wealth of the parties does appear from the evidence. Vaughan v. Kishineff, Tex.Civ.App., 63 S.W.2d 1081; Hewitt v. Buchanan, Tex.Civ.App., 4 S.W. 2d 169, loc. cit. 178(25-27). The harmful effect of the argument was augmented by the court's failure to instruct the jury not to consider it, as requested by plaintiff. Appellant's points reveal an intentional and persistent effort on the part of appellee's counsel to inject into this case the extraneous matters above discussed, which they successfully accomplished, in some instances notwithstanding the court's adverse ruling. The court's failure to instruct as requested by plaintiff's counsel emphasized the improper conduct and argument.

█ We are unable to say that under all the circumstances there is not any reasonable doubt of the harmful effect of such conduct, or that it affirmatively appears that no prejudice resulted therefrom. Under the above rule the judgment must therefore be reversed and the cause remanded.

█ We think the proffered testimony of Doctors Green and Price was improperly excluded. It has been so held in Iowa,

Veeder v. Delaney, 122 Iowa. 583, 98 N. W. 373, and in Michigan, Grinnell v. Carbide and Carbon Chemical Corporation, 282 Mich. 509, 276 N.W. 535. We approve of these holdings. See also 25 C.J.S., Damages, § 47-b, p 527. Reversed and remanded.