**ALVEY v. GOFORTH.**

No. 15464.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 20, 1953.

Rehearing Denied Dec. 18, 1953.

314

Davenport & Anderson, Mock & Kee and C. Coit Mock, Wichita Falls, for appellants.

Nelson & Sherrod, and Eugene Sherrod, Jr., Wichita Falls, for appellee.

MASSEY, Chief Justice.

From a judgment in favor of the defendant in a personal injury automobile negligence suit, the plaintiffs appeal.

Reversed and remanded because of improper argument.

On July 3, 1952, at about 6:45 P.M., and during daylight hours, Fonda Gayle Alvey, a six year old daughter of Frank Alvey, sustained personal injuries as the result of being struck by an automobile driven in the city limits of Wichita Falls, Texas, by Leon Goforth. Goforth was accompanied in his automobile at the time of the occurrence by his wife, who was in the front seat on the right-hand side. The collision occurred on Beverly Drive, which street at the point of the occurrence runs generally in a north-south direction, and is a concrete-paved street, approximately 30 feet in width. There are concrete curbings to either side of the street, and houses are on all the lots with building construction-line at least 30 feet from the curbs. At a point approximately 100 feet to the south from the point of the collision is the crest of a slope or "rise", to the north of which the roadway is "down-grade" so that a motorist traveling in a northerly direction is going downhill. Leon Goforth was traveling downhill and north. As to the dwellings on the east side of the street each lot was on a level below that of the one to the south, so that each driveway which was located to the south of each house had a retaining-wall or "high curb" at its south side running out almost to the street. Immediately to the south of one particular driveway there was a parked automobile at the east curb, pointing north.

The little girl lived in a house located to the west of Beverly Drive. She had left home and gone to the house of a friend, whose driveway was the one above mentioned. She had just left this house, walked down the driveway above mentioned and passed by the front end of the parked car above described as to location, and was struck by the Goforth automobile when she was at a point approximately 10 feet to the north of, and approximately 10 feet further

out into the street than the left side of such parked car. The front of the Goforth car struck the girl. The motion of the car and force of the impact, perhaps coupled with some motion on the part of the child toward the west—if she was in motion going west at time of the impact— threw her toward the northwest, so that she came to rest at a point 50 to 75 feet in a northwesterly direction from the point of collision. She came to rest in the street, but close to the west curb.

There was evidence that the little girl stopped and waited for vehicles to pass by, going south on the street, then starting across the street. She apparently did not see the vehicle which struck her, but did look and see other vehicles traveling the street.

During the course of interrogation by the plaintiffs' counsel Leon Goforth added to a reply called for based upon whether or not he had told the investigating policemen that he was going 35 miles per hour immediately prior to the time of the collision, the voluntary statement, "I didn't receive a ticket". The attorney for the plaintiffs did not ask that such part of the answer so given unresponsively be stricken, but continued his cross-examination on matters unrelated to the question of arrest. Upon the witness being taken by his own attorney, such attorney asked him, "And they gave you no ticket for speeding did they?" receiving the answer, "No, sir". Objection was then made by plaintiffs' counsel on the ground that the question was leading, another form of hearsay, and an attempt to inject into evidence some opinion on the part of the police officers. The objection was overruled. The witness was further asked by his own counsel whether he received any form of ticket from such officers and he replied that he had not. The plaintiffs again objected and were overruled. It might be noted that the plaintiffs in addition to their objections moved for a mistrial at the time.

The trial continued and after the charge was prepared, the case was argued to the jury. During the course of the argument to the jury by counsel for defendant Goforth, such counsel made the following argument concerning the investigating officers who came to the scene of the collision and made the usual investigation and talked with Goforth, and concerning Goforth's wife, the testimony of none of them having been used during the trial.

Mr. Sherrod:

"All right now then let's talk about the witnesses who are not here, they will criticize me, why didn't you bring up this officer, surely Gene Sherrod investigating this case went down and talked to the officers at the police station, he wouldn't just sit around and have a big lawsuit here, representing Leon Goforth sued for thousands of dollars over an accident and not go down and talk to the police officers. And I did, and you know as reasonable men that I did, and you know as reasonable men that they did. Why didn't I bring the officers in here? If I had thought they would have helped me I would have. Why didn't they? If they thought they would have helped them they would have brought them. If the officers had said anything that hasn't already been brought to you that is on my side of the case I would have had them here, if the officers had said that the skid marks were only five feet long instead of six, I would have had them up here on my side, but if the officers had said that the skid marks were seven, eight, ten, fifteen feet, they would have had them up here to prove their side.

"But the officers also said they were six feet just like Leon said they were and there wouldn't have been anything up here to prove. If he told the officers he was going 40 miles an hour they would have had them up here. I don't bring them up here because I am sure that they have everything that the officers have. There is nothing they could add to this law suit. Now then let's talk about some more witnesses we didn't have. Mrs. Goforth, why didn't I put her on the stand? I would have if I had thought she would help my case. But if she tells exactly the same story that Leon does, there is nothing for me to put her on

to prove. They took her deposition, had her, questioned her just like they did Leon, they asked her every question they could think of, you know that if her testimony had varied in any degree from Leon Goforth's they would have immediately set upon Leon and said Mrs. Goforth, you take the witness stand, they would have gotten that deposition and said now wait a minute, your husband says this, didn't you say this—

"Mr. Kee: May it please the Court, this line of argument on the part of Mr. Sherrod is a comment on our failure to put on Mrs. Goforth and the failure to put on the officers, they are not witnesses under our exclusive control and therefore it is prejudicial to the rights of the Plaintiff and we ask the Court to instruct the jury not to consider any of it for any purpose.

"The Court: Overruled.

"Mr. Kee: Note our exception.

"Mr. Sherrod: Now then if Mrs. Goforth was seated on the right and the child came from the right, we think, if she had seen that child dart out of there that would have been something good, I would have had her on there, I would have said 'Yes, we know that child was running and darting' but on the other hand if she says that she saw the child for the first time just at the instant that her husband did, or that she screamed and he hit the brakes just about the same time then there is nothing that her testimony adds that will help our case or that will hurt it, and if there is anything that would have hurt it they sure would have put her on the witness stand.

"Now they can say 'Oh, that's your client' but that doesn't make any difference, if it would have helped your case you would have had her up there, so we have got to assume, let's don't try the case on witnesses that are not here, the officers or Mrs. Goforth, let's just try it from what we have heard.

"You know that if there is anything that I know of that would have helped me I would have had it up here and they would have done the same thing.

\*    \*    \*    \*    \*    \*

"All right, now then after the accident Leon you did go over to where the skid marks were? Yes, sir. How long were they? In my opinion about six feet long. Were the officers present? Yes, sir. Did they see the skid marks? Yes, sir. What did you tell the officers? I told them I was going 30 to 35 miles an hour. All right Mr. Alvey did you hear later on how long the skid marks were? Yes, sir. What did you hear? I heard they were six feet long. Did you have somebody out there to investigate the case for you? Yes, sir, a sergeant in the army. Now then if anybody had thought that the skid marks were longer than six feet you would have heard about it wouldn't you? Either the sergeant that they had investigating it or the police officers or Leon Goforth, nobody says they were more than six feet long. So you know that that is the length of them.

"Now then you know as engineers, as mechanics, as men with mechanical minds, as scientists, and there is some good scientists on this jury I'll bet you, you know that he couldn't have stopped in six feet if he had been going faster than twenty to twenty-five miles an hour even on level, on level ground he couldn't do it, here he is going down the hill, and there is the physical facts, and they say 'Oh but he says something else, and he does, now we have got to decide which is the truth, and we know that those skid marks were six feet long and we know that you can't stop a car in six feet if you are going 35 miles an hour or if you are going 30 miles an hour. We know it and so do the officers who were there looking at it at the time and regardless of what you told them Leon, regardless of what you told the officers when they saw these skid marks they gave you no ticket, they charge you with no offense, they were there for the sole purpose of investigating that and making an arrest if there was a violation, the skid marks were on your side of the highway, they were such that we as officers know that you could not have been exceeding the speed limit. Now is that unreasonable? Am I trying to trick you? Am I being unfair with you? I don't believe so." (Emphasis ours.)

A bill of exceptions was taken to such argument on the part of defendant's attorney with reference to the comment on the failure to produce various witnesses, for the reason set forth in the quoted objection, and upon the further ground that such argument was not made in answer or reply to and was in no way provoked by any statement of plaintiffs' counsel. The bill was qualified by the court to show that prior to the above quoted argument Mr. John Davenport, an attorney for the plaintiffs, in his opening argument to the jury made the following statement:

"Now then let's get down to that question over there do you find—I forget now what question it is anyhow the emergency, how could there be an emergency gentlemen of the jury. Now listen. How could there be an emergency when according to his own testimony that he didn't see the child until he hit her. If that is true why then there couldn't have been any emergency because he didn't see the object, what he run over and broke her leg until he had already hit her. Now is that evidence corroborated? Why he testified he seen her about the time he hit her, his wife didn't get on the stand and deny that, that is the absolute facts. So that should be answered 'no'."

Thereafter the jury retired and afterward returned a verdict.

By its verdict the jury failed to find any excessiveness of speed on the part of the defendant, and failed to find any of the negligence charged by way of improper lookout, answered "none" to the issues on damages, and then found in behalf of the defendant on all elements of "sudden emergency", and found against the plaintiffs on the contributory negligence issues and proximate cause issues conditionally submitted thereunder on improper lookout, running suddenly into the path of an automobile and from behind a parked automobile, failure to wait before attempting to cross, etc.

Judgment was entered in behalf of the defendant, and the plaintiffs appealed, assigning as errors substantially the argument above set forth, and the admission of the testimony concerning the failure on the part of the police officer to give the defendant a traffic violation ticket.

Regarding the argument relating to the failure on the part of the appellants to use the police officers as their witnesses, whose testimony the appellants were under no duty to produce, it is to be noted that we do not have merely the question as to whether it would be presumed that if these officers' testimony had been introduced by the appellants such testimony would have been unfavorable to them, and the attorney for the appellee arguing merely this as his conclusion,—but we have in addition the question as to whether the conclusions appellee's attorney did draw as to what the testimony of such officers would or would not have been were properly stated to the jury as a part of his argument. In connection with the questions we have the fact that the appellee's counsel told the jury that in process of preparing for trial he interviewed the police officers and ascertained what their testimony would be, and that his adversaries did also, and likewise knew what the testimony of the police officers would have been. It is to be noted that the police officers were not interested parties nor persons in any legal sense under domination of or control of either litigant.

Appellee argues before this court that this is not a case where error concededly results by reason of an attorney arguing to the jury that "had a missing witness been brought before the jury to testify he would have testified to some fact not testified to upon the trial", but is conversely a case where no error could have resulted because the argument which was made to the jury was that "had the missing witness been brought before the jury to testify he would *not* have testified to any fact *not testified to by others*". Appellee points out that he admitted in his argument that the police officers, if present, would not have testified to anything that would aid his client's case by adding anything favorable thereto, before he likewise argued that his opponent did not bring the police officers to testify because they would not have testified to anything

**318**

that contradicted the facts testified to by his witnesses. Under such circumstances, he contends, there could be no ability on the part of his opponents to demonstrate that they were prejudiced.

█ We do not deem it within the power of a litigant to obviate either error or prejudice resulting therefrom to his opponent, by attempting to demonstrate that he stands on equal footing with his opponent in respect to a failure to use the testimony of designated witnesses, where by his own act he injects into his argument that his opponent failed to introduce certain evidence which he likewise failed to introduce. It is the charge against his opponent of failure to introduce testimony of such witnesses which is the error which may be taken advantage of by such opponent. The fact that such charge is onerous is not obviated by the admissions he makes respecting his own failures. To hold differently would be to establish a principle of law possible to be taken into consideration by litigants as planned strategy so that such arguments considered to be helpful could be purposely planned to be made along the line of that inadvertently made in this instance. It could result in a form of trial of cases on other than the witnesses and the testimony which was introduced, but conversely upon surmise and conjecture as to what testimony not produced would have been from witnesses who did not testify. This would be true irrespective of whether the argument made might be that the testimony, had it been introduced in evidence, would not have altered the proof which was introduced, because it would then improperly become a matter of conclusion for the jury. And if the argument context commenting upon the failure of an adversary to bring forward a designated witness to testify in his behalf demonstrates or implies that the testimony which would have been given by such witness would be upon an issue or issues material to the determination of the rights of the parties and would strengthen his case or weaken that of his opponent, then a court may conclude, upon finding that such argument was reasonably calculated to and probably did cause the re-

turn of an improper verdict, that prejudicial error resulted to the complainant. This is the law in those cases where the witnesses (who are actually or inferably shown to be available to testify, but who were not called) are neither shown to be adverse parties, or persons under the domination of or control of an adverse party, because in such instances it would be tantamount to the person making the unwarranted argument telling the jury that had such witnesses testified their testimony would be favorable to his client, and invoking in his client's aid the supposed testimony of such witnesses in corroboration of his other evidence. 41–B Tex.Jur., p. 304, sec. 252.

Lottman v. Cuilla, Tex.Com.App.1926, 288 S.W. 123, and authorities there cited; Robbins v. Wynne, Tex.Com.App.1932, 44 S.W.2d 946; Smerke v. Office Equipment Co., 1941, 138 Tex. 236, 158 S.W.2d 302. These cases are cited as to the error involved rather than as to the reversibility resulting from the error.

██ It unquestionably appears that the argument of counsel for the appellee was improper. Nevertheless, in order for the error in making the improper argument to be reversible, it must also appear that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, as per the requisite of Texas Rule of Civil Procedure Number 434. Such is now the law. Aultman v. Dallas Railway & Terminal Co., Tex.Sup.1953, 260 S.W.2d 596. Applying this as the test of culpability to the argument which was made we conclude that the statements made during the course of the argument of the appellee were in law reasonably calculated to cause the rendition of such a judgment as might not have been rendered but for its having been made, and in fact probably did cause the rendition of such a judgment as might not have been rendered but for its having been made. A judgment would be an improper judgment under these conditions. We arrive at this conclusion because the testimony of the police officers which was the subject of the argument would have related to the ques-

tion of appellee's speed immediately prior to the time of the collision, and the case is one where this question is of the utmost importance of consideration in view of the physical facts obtaining at the scene, and in consideration of the other question as to appellee's lookout. Likewise it is of the utmost importance in the consideration of the alleged acts and omissions contended to amount to contributory negligence on the part of the appellants. Though the jury found "None" in answer to the issues submitted on damages, the evidence indisputably established that the injured girl did sustain substantial injuries, and the error and prejudice resulting from the improper argument will not be obviated because of this finding upon the trial.

■■ As to the argument of appellee relating to the failure on the part of the wife of the appellee to testify, it is to be noted that the appellants' attorney commented upon her failure to testify, drawing the conclusion that such failure strengthened appellants' case on the sudden emergency question. She was in position as a party and the comment was proper. 41–B Tex.Jur., p. 301, sec. 251. Appellee's attorney argued that if her testimony would have strengthened his case he would have had her testify, and that her failure to testify did not aid appellee's case or weaken the appellants' case or they would have placed her on the stand and had her testify, particularly by use of the deposition they had theretofore taken from her. It appeared that appellee's wife was present upon the trial and that the appellants had taken her deposition, no part of which had been introduced. In law she was an interested party, being exposed to financial loss should an adverse judgment be entered against her husband, and subject to the same character of interrogation as would have been the case had her husband been placed on the stand by the appellants. From the extent of the appellee's argument as to Mrs. Goforth, it does not appear to have exceeded proper limitations under appellee's right to reply to the argument appellants' counsel had made in the opening argument. 41–B Tex.Jur., p. 335, sec. 279. In any event, application to this part of the argument of the test to determine whether it was reasonably calculated to and probably did cause the rendition of an improper judgment demonstrates that it was not and did not.

■ Regarding the complaint made as to the development by counsel of evidence that the investigating officers did not give a traffic violation ticket to appellee, which occurred after appellee, during the course of his cross-examination by appellants' counsel, made the unresponsive and self-serving statement that he had not received a "ticket". When this occurred there was no objection to the statement, and no motion to strike it. Neither was there any objection or similar motion made as to such coupled with the objections that appellants did make when appellee's counsel sought to develop or emphasize the fact that no ticket was given. Appellants have waived the point in view of their failure in this respect. 3–A Tex.Jur., p. 214, sec. 166.

■ Appellee by a counterpoint insists that he is entitled to an affirmance of the judgment under the circumstances that there was insufficient evidence to raise the issues of negligence and proximate cause against him, and that an instructed verdict would have been proper. Appellee wants the appellate court to find as a fact that the evidence was insufficient to support a verdict and judgment for the appellants had they obtained one and to affirm the judgment for that reason. A court of civil appeals has no power to "find facts", it may only "unfind facts" which a jury or trial judge has improperly found. In other words, even were we to believe the evidence insufficient to have supported a verdict and judgment rendered in behalf of the appellants, we could do nothing except remand the cause for another trial even had such a verdict and judgment resulted. Only a jury or other finder of fact may deny the right of a plaintiff to recover if there is any evidence raising a material issue, and this province is exclusively that of the finder of fact. A court may only provide another trial whereby the finder of fact may return what the court might then deem a

correct finding, be it a denial of relief to the plaintiff, or a granting of relief upon other or additional evidence the court then deems sufficient. Sanders v. Harder, 1950, 148 Tex. 593, 227 S.W.2d 206; Wisdom v. Smith, 1948, 146 Tex. 420, 209 S.W.2d 164.

Judgment is reversed and the cause remanded for another trial.

### On Motion for Rehearing

■ Perhaps what we have said in the last paragraph of the opinion could be misconstrued. Of course, if there is any evidence of probative force or value raising the affirmative of a material issue in a trial, such evidence supports the submission of a special issue thereupon in the charge of the court, even though an answer in the affirmative made thereto by the jury would have to be set aside and a new trial granted because against the great weight and preponderance of the other evidence thereupon.

In other words, and as applied to the facts in this case—had the jury answered all or any of the issues of negligence and proximate cause against the defendant in the trial court—then the test would be applied to the evidence applicable to the issue or issues so answered and if such evidence and attending circumstances so strongly negated such affirmative findings as to lead to the conclusion that the jury was laboring under some misapprehension or improper motive or influence in arriving at its answers so made, then it would be the duty of a trial or appellate court to see that there was another trial. This would be the circumstance should there be some evidence of probative force raising the affirmative of the issue. Gulf, C. & S. F. Ry. Co. v. Wilson, Tex.Civ.App.1900, 59 S.W. 589, 60 S.W. 438, error dismissed; King v. King, 1952, 150 Tex. 662, 244 S.W.2d 660.

■ Not so in a case where there was no evidence raising the issue, or no evidence of probative force or value raising the issue. In such instances there would be "no evidence raising the issue" or "in-sufficient evidence to raise the issue". In such an instance no issue should have been submitted by way of a special issue in the charge in the first instance. And in a case where such a special issue was erroneously submitted to the jury and answered erroneously, then the answer should be ignored. City of San Antonio v. Lane, 1869, 32 Tex. 405; 17 Tex.Jur., p. 925, sec. 417. Indeed it should actually be ignored whether the answer made was erroneous or not, because it is actually answered as a matter of law without any action by a jury. This is at least the case in a suit where the issue is truly one incumbent upon a plaintiff to raise by proof as to primary negligence of a defendant which was plead as a ground of recovery.

Re-examination of the appellee's counterpoint reveals that his contention is that no issue was raised as to his primary negligence—inquired about in special issues relating to his speed and lookout. In other words, he contends that there was either no evidence whatever that he was driving at an excessive speed or was derelict in his duty to keep a proper lookout, or that there was no evidence of sufficient probative force or value to warrant the submission of the questions to the jury. If he is correct then he may still have won his case, but if not he will be exposed to the hazard of another trial.

■ Nowhere in the transcript is it made to appear that the appellee, as defendant in the trial court, ever moved for an instructed verdict on any ground. Neither was there any objection or exception taken by him to any issue submitted in the charge. T.R.C.P. 279 provides that a claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict. This is what appellee does for the first time on his appeal. It was presented as a counterpoint in his orginal brief. As we understand the law, a defendant who wins his case in the trial court, but whose victory would be taken away from him on appeal because of some error committed upon the trial—such as in the case of prejudicial ar-

gument—is nevertheless secured if he can demonstrate that the plaintiff never introduced sufficient evidence to make out a prima facie case. This is true even though he makes the assertion for the first time on appeal.

 Since the collision occurred at a point where the lawful speed limit was 30 miles per hour, and there is evidence in the record to the effect that the appellee himself admitted to the investigating authorities immediately after the occurrence that he was driving about 35 miles per hour upon the occasion in question, we believe there was evidence of probative force and value raising this question at least and the appellant made out a prima facie case for the jury.

The motion for rehearing is overruled.