LEON GOFORTH V. FRANK ALVEY, INDIVIDUALLY
AND AS NEXT FRIEND.

No. A-4475. Decided June 30, 1954.
Rehearing overruled October 6, 1954.
(271 S.W. 2d Series 404)

*Nelson & Sherrod* and *Eugene Sherrod, Jr.*, of Wichita Falls, for petitioner.

*Mock & Kee* and *Davenport & Anderson*, and *C. Coit Mock*, all of Wichita Falls, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is an action for damages for personal injuries to a pedestrian struck by an automobile. In answer to special issues the jury exonerated petitioner, who was defendant in the trial court, of each and every act of negligence submitted, and found that the minor, who sued by her father as next friend, the respondent herein, committed various acts of contributory negligence. Upon the verdict, judgment was rendered that respondent take nothing. That judgment was reversed and the cause remanded by the Court of Civil Appeals. 263 S.W. 2d 313.

The ground upon which the trial court's judgment was reversed was improper argument by petitioner's counsel. The court reasoned that a portion of the argument was improper, and then held that, as a matter of law, it was calculated to cause, and probably did cause, the rendition of an improper judgment. The argument is set out at great length in the opinion of the Court of Civil Appeals. We see no reason for reproducing it here. Even if, at some point, it overstepped the bounds of proper argument, a question which we need not discuss or decide, we are well convinced that it was not, as a matter of law, calculated to cause or that it probably did cause the rendition of an improper judgment. In our view no juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict

contrary to that to which he would have agreed but for such argument. The argument was not of the type characterized generally as prejudicial and inflammatory, and neither did it introduce into the case any new evidence of a material nature. In the main, the portion of the argument objected to consisted of deductions drawn by the attorney from facts in evidence. His deductions may have been fallacious, but, if so, it is inconceivable to us that the jury could have been influenced improperly by them.

In view of our conclusion above expressed, we find it unnecessary to decide the question presented that there was no proof of negligence on the part of petitioner, and that the evidence was such that it did not admit of any judgment other than that which was rendered.

Because it is our view that it cannot be held, as a matter of law, that the argument by petitioner's counsel was calculated to cause, and probably did cause, the rendition of an improper judgment, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered June 30, 1954.

MR. JUSTICE WILSON joined by JUSTICE GARWOOD, dissenting.

I respectfully dissent. At the scene of the accident defendant had told the officers he was driving thirty five miles per hour. During the trial he contended that in this he was mistaken. The most damaging portion of the defendant's argument was an effort to explain the defendant's statement to the officers. It follows:

"* * * and they say 'Oh but he says something else, and he does, now we have got to decide which is the truth, and we know that those skid marks were six feet long and we know that you can't stop a car in six feet if you are going 35 miles an hour or if you are going 30 miles an hour. We know it and so do the officers who were there looking at it at the time and regardless of what you told them Leon, regardless of what you told the officers when they saw these skid marks they gave you no ticket, they charge you with no offense, they were there for the sole purpose of investigating that and making an arrest if there was a violation, the skid marks were on your side of the highway, they were such that we as officers know that you

could not have been exceeding the speed limit. Now is that unreasonable? Am I trying to trick you? Am I being unfair with you? I don't believe so."

Here the lawyer testifies:

1. The officers knew that you can't stop a car in six feet going 30 or 35 miles per hour.

2. Although Goforth told the officers he was going thirty five miles per hour, the officers could see the skid marks and therefore did not give Goforth a ticket since from the skid marks "we as officers know that you could not have been exceeding the speed limit."

3. The officers were there for the sole purpose of investigating and making an arrest if there had been a violation.

The testimony that defendant did not receive a police ticket was first injected into the trial by defendant himself while under cross-examination. Although that error may not have been preserved, defendant's attorney proceeded to argue it to the jury. The issuance of a ticket in lieu of arrest is but the method of initiating a criminal proceeding. Except possibly for impeachment, even a judgment entered in a criminal proceeding after a full trial (not based on a plea of guilt) is not relevant to the same issue in a civil case. Sherwood v. Murray, Texas Civ. App., El Paso, 1950, 233 S.W. 2d 879.

So this amounts to a lawyer discussing facts not in evidence (the officers' deductions and opinions about speed) and then arguing that since there was no arrest (because of their deductions) the defendant was not speeding. I believe this to be argument which need not be objected to in order to preserve the error. Wade v. Texas Employers Insurance Association, 150 Texas 557, 244 S.W. 2d 197; Ramirez v. Acker, 134 Texas 647, 138 S.W. 2d 1054. I would affirm the Court of Civil Appeals in holding that this argument probably caused the rendition of an improper verdict and reverse.

Opinion delivered June 30, 1954.

MR. JUSTICE SMITH dissenting.

I respectfully dissent. This cause should be reversed and remanded for a new trial. The argument is enough to justify a

reversal. The matters discussed had a direct bearing on the question of "speed." Respondent's theory of primary negligence was presented in two issues: (1) excessive speed under the facts and circumstances and (2) failure to keep a proper lookout. The issue of speed under the circumstances most assuredly had a direct bearing on the issues of negligence charged against the petitioner as well as the issues on contributory negligence and the issue of "sudden emergency," as alleged by the petitioner.

The accident occurred about 100 feet below the crest of a hill. The child could not have seen the petitioner's car beyond the distance of 100 feet. The rate of speed of the car would have a direct bearing on the questions of whether the child kept a proper lookout; whether she attempted to cross the street at a time when it was not safe to do so; and whether or not she exercised ordinary care (the child was only six years of age). The trial court defined "ordinary care," as applied to Fonda Gayle Alvey, as meaning "that degree of care which would be exercised by an ordinary prudent child of the same age, experience, intelligence and capacity as the said Fonda Gayle Alvey." Petitioner's argument probably caused the rendition of an improper verdict on these issues of contributory negligence. I quote below excerpts from the evidence, which, in my opinion, demonstrate conclusively that the argument of counsel for petitioner was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Defendant Goforth testified:

"Q. Well, now you mean from the top of the break of that down to the—how many lots are there in here between the time where this hill breaks to where you hit the girl? At least two aren't there?
"A. Yes, Sir.
* * *
"Q. You knew that was a residential neighborhood and you knew that families lived there and there was children there?
"A. Yes, sir.
"Q. And you knew that there was not a cross walk for them to cross for a quarter of a mile, didn't you?
"A. Yes, sir."
* * *

Under these circumstances, Goforth further testified:

"Q. How much of her would have been visible above the top of the yard itself, walking down that driveway?

"A. Not quite half of her body.

"Q. Did you ever look over there to the right toward that driveway as you topped the hill?

"A. No that I know of.

"Q. Did you ever look over on the right hand side at all?

"A. I just try to watch both sides and then watch where I am going.

"Q. I'm talking about on this particular occasion. Do you recall looking over on the right sidewalk or the left sidewalk or up on the driveway or on either side?

"A. No, sir."

*  *  *

"Q. Well now, did you see her long enough to tell what she was doing?

"A. No, sir, I didn't see her at all until I hit her.

"Q. You don't know whether she was running or not, do you, Leon?

"A. No, sir, I am not sure."

*  *  *

Regarding the issue of excessive speed that was submitted to the jury, Goforth testified:

"Q. How fast do you think your car was traveling at the time it actually hit the little girl?

"A. Twenty-five.

"Q. Now where was the little girl when you got out?

"A. She was to my left and down the street.

"Q. At least 50 feet down there?

"A. Somewhere about that.

"Q. Conscious or unconscious?

"A. She was unconscious."

*  *  *

"Q. I will ask you whether or not you talked to the officers who came out to investigate the accident?

"A. Yes, sir.

"Q. Did they ask you how fast you were going?

"A. Yes, sir.

"Q. Isn't it a fact that you told them you were going about 35 miles an hour?

"A. Yes, sir."

*  *  *

Mrs. Alvey testified as follows:

"Q. O, yes, Mrs. Alvey, were you present when the officers arrived out there?

"A. Yes, sir.

"Q. I will ask you whether you heard them ask the Defendant Leon Goforth how fast he was driving?

"A. Yes, sir.

"Q. Did you hear him answer?

"A. Yes, sir.

"Q. What was his answer?

"A. He said he was driving 35 miles an hour."

The argument probably did cause the jury to answer the issues of direct negligence and contributory negligence against the respondent. The evidence shows that petitioner was traveling at the rate of 35 miles per hour in a residential neighborhood; that he was traveling at such speed at the top of the hill; that his car was being driven at the rate of 25 miles per hour when his car struck the six-year-old child; that he did not see the child before striking her; and that he did not look to the right or the left immediately before striking the child. Another important fact is that the child was rendered unconscious by the force of the car, and was thrown in some manner a distance of approximately 50 feet from the point of impact. If the jury had answered the issues in a manner favorable to respondent, then certainly the preponderance of the evidence would have supported such finding. I contend that the attorney for the petitioner injected into the case in his argument the testimony of witnesses who did not testify. He discussed the testimony of these non-appearing witnesses just as though they had actually appeared. See Lottman v. Cuilla, Texas Com. App., 288 S.W. 123. The case of Aultman v. Dallas Railway & Terminal Co., 152 Texas 509, 260 S.W. 2d 596 and Lumbermen's Lloyds v. Loper, 153 Texas 404, 269 S.W. 2d 367, held that the error, to be reversible error, must be one that probably did cause the rendition of an improper judgment in the case. In the latter case, we said; "In the Aultman decision, we determined this question 'In the light of the whole record * * *.' The 'whole record' clearly includes the statement of facts, and there is small point in looking to the latter, if we are to ignore the most essential thing which it discloses, to wit, the state of the evidence." In the present case, by looking to the state of the evidence before argument, one cannot fail to reach the definite conclusion that the additional improper evidence presented to the jury, through argument of counsel, influenced the jury and not only probably caused but did cause it to answer

the issues contrary to the preponderance of evidence; i.e., the evidence which was introduced during the trial and before argument of counsel began.

The judgment reversed by the Court of Civil Appeals should be sustained for the further reason that the trial court erred in failing to grant respondent's motion for a mistrial. This motion was presented after petitioner had (1) voluntarily, and not in response to questioning, stated in the presence of the jury that "no ticket" was given to him by the officers, and (2) testified to the same fact over the objection of respondent. This testimony was highly prejudicial and was the basis of a part of the harmful argument by counsel for the petitioner. The error arose in the following manner: Respondent called petitioner as a witness under the adverse party rule. He testified in part, as follows:

"Q. Now what did you tell the officers about how fast, then, about how fast you were going?

"A. I told the officers thirty to thirty five.

"Q. Now then . . .

"A. And he said (meaning the officer), 'Young man, you had to be going one or the other.'

"Q. What?

"A. He said, 'Young man, you had to be going either 30 or 35 which was it?' And I said, 'I am not positive, but I will say 35.' "

This completed the examination. The attorney for respondent then said:

"Q. All right?" (These two words are indicated as a question, but they were not.)

Then the respondent, without being questioned, volunteered the following: "I didn't receive a ticket." No objection or motion to strike was made immediately, but thereafter the following proceedings transpired while the petitioner was being questioned by his attorney:

"Q. Now Mr. Goforth when you talked to the officers did you make a mistake as to some other things that you told them there at the time?

"A. Yes, sir.

"Q. And also the speed is that right?

"A. Yes, sir.

"Q. Now did you measure your car tracks how far it slid or step it off or look at it?

"A. We just looked at it.

"Q. And about how many feet was it that your car slid?

"A. It was about six.

"Q. Six feet?

"A. Yes, sir.

"Q. Yes sir, and the officers were there and they saw that too didn't they?

"A. Yes, sir, they did.

"Q. And they gave you no ticket for speeding did they?

At this point the attorney for respondent objected, as follows:

"MR. MOCK: Now may it please the Court this is another form of hearsay, Mr. Sherrod is asking leading questions one after another trying to inject some opinion by the officers . . ."

Mr. Mock did not complete his objection because of the following interruption by Mr. Sherrod: "All right it possibly was leading your Honor." Then Mr. Mock said: "And we ask that the Court instruct the jury not to consider the question or the answer for any purpose." "THE COURT: Gentlemen, you are so instructed."

"MR. SHERROD: Now Mr. Goforth, state whether or not the officers gave you any ticket . . .

"MR. MOCK: May it please the Court . . .

"MR. SHERROD: . . . there at the time for any traffic violation whatsoever?

"A. I received no ticket.

"THE COURT: *Just a minute when the lawyer is up don't answer the question.*" (Emphasis added.)

"MR. MOCK: That was the objection that I made your Honor which the Court sustained and they have deliberately violated the Court's ruling and I ask that the jury be instructed not to consider the question or the answer for any purpose.

"MR. SHERROD: Your Honor, his objection was that it was a leading question.

"THE COURT: I believe that's right.

"MR. SHERROD: And I agree to reframe it.

"THE COURT: That is right.

"MR. SHERROD: But the testimony is already in the record on his examination the statement was made by the witness at that time.

"MR. MOCK: That was not the basis of my objection your Honor.

"THE COURT: I will overrule the objection.

"MR. MOCK: Note our exception. I would like to prepare a full bill on the last question and answer your Honor out of the presence of the jury.

"THE COURT: All right gentlemen, we will stop at this point until nine o'clock tomorrow morning, be back at nine in the morning. (JURY RETIRED.)

"MR. MOCK: I want to finish my bill to the ruling of the Court in allowing the Defendant in this lawsuit under the questioning of defense counsel to state in the presence of the jury that the officers did not give him a ticket for speeding at the time that they investigated the accident. If the officers were present on this stand they would not be permitted to testify that they did or did not give a ticket, the only evidence that could be introduced in the trial of this case would be a certified copy of the judgment.

"THE COURT: I understand.

"MR. MOCK: And it is highly prejudicial to the Plaintiff for the Court to permit the Defendant twice over the objection of Plaintiff's counsel to tell the jury that he did not get a ticket for speeding, and if the officers were present all they could testify would be as to what they saw at the time of the accident and what they—what the parties told them.

"THE COURT: I agree with that except for this one thing. You proved by the witness' deposition that the officers asked him if he was not going 35 miles an hour, and I think it is admissible in rebuttal to show that the same officer did not give him a ticket, that is the only purpose but you brought that out. That's the purpose for admitting it.

"MR. MOCK: Now comes the Plaintiff in the above entitled and numbered cause and moves the Court to declare a mistrial in here in view of the highly prejudicial testimony that has been introduced before the jury to the effect, under the questions of defense counsel of the defendant himself to the effect that the officers did not give him a ticket and it has been repeated before the jury twice and Plaintiff's counsel having requested the Court twice to sustain the objection and to request the jury not to consider the same and the Court having refused, such irreparable damage having been done, it would now be impossible for this Plaintiff to secure a fair and impartial trial before this jury.

Signed C. Coit Mock, Attorney for the Plaintiff.

"MR. SHERROD: You want a mistrial, I will join you in a mistrial.

"THE COURT: Do you want to insist on this matter.

"MR. MOCK: I just want to make the motion and make it a part of my record, I think from all the evidence . . .

"MR. SHERROD: You really want it—I will join you.

"MR. MOCK: I think I am entitled to that protection in view of the Court's ruling, and I don't think I ought to be put in that spot by the ruling of the Court saying that if you insist on it I will give it to you or anything like that.

"THE COURT: Well now I don't think that the motion is good.

"MR. MOCK: I have been deliberately put into that spot by something that Mr. Sherrod knows is not admissible.

"THE COURT: Well I don't think that it is error, I don't think there is any error at all in it, in my opinion.

"MR. MOCK: Well the thing for you to do is to overrule the motion then.

"THE COURT: That would be true ordinarily, it is immaterial as to whether anybody gave a ticket or not, that's immaterial but Mr. Mock proved by his own witness that he told the officers he was going 35 miles an hour and I think that he is entitled to show that . . .

"MR. MOCK: It was not my witness it was by way of impeaching what the Defendant testified to.

"THE COURT: If you hadn't gotten that in there I am sure that the . . .

"MR SHERROD: It is the only bit of evidence on speed that will be in the case.

"MR. MOCK: e ask that the . . . not the statement of counsel or of the Court but the statements of the witness as shown by the statement of facts be incirporated in connection with this bill."

The action of the trial court in admitting the testimony and overruling respondent's motion for a mistrial, followed by the prejudicial argument based on such evidence, probably caused the rendition of an improper judgment in this case. In the light of the action of the court, it was unnecessary for the petitioner to object to the following argument: ". . . We know it and so do the officers who were there looking at it at the time and regardless of what you told them Leon, regardless of what you told the officers when they saw these skid marks they gave you no ticket, they charged you with no offense, they were there for the sole purpose of investigating that and making an arrest if there was a violation, the skid marks were on your side of the highway, they were such that *we* as officers (emphasis added) know that you could not have been exceeding the speed limit. Now is that unreasonable? Am I trying to trick you? Am I being unfair with you? I don't believe so."

Respondent objected to the argument of petitioner's attorney when he was referring to the skid marks, as follows: "But the officers also said they were six feet just like Leon said they were and there wouldn't have been anything up here to prove." The fact that the skid marks were not measured, but only "looked at," and the fact that counsel for petitioner in his argument to the jury said that the officers (who did not testify) would have testified to the "same thing" Goforth testified, i.e., that Goforth was driving his car only about 15 miles per hour; that the skid marks were only 6 feet in length, and, further, that in the opinion of the officers, the petitioner violated no traffic law, all require a reversal of this case.

The judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered June 30, 1954.

Rehearing overruled October 6, 1954.