MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellant,

v.

Earlene HUDDLESTON et vir, Appellees.

No. 16561.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 13, 1964.

Rehearing Denied Dec. 11, 1964.

---

William A. Thie, Denison, Friberg & Parish, and Elmer J. Parish, Wichita Falls, for appellant.

Mock, Banner & McIntosh, and Jack Banner, Wichita Falls, for appellees.

MASSEY, Chief Justice.

This case grew out of a railroad crossing collision between a train and a passenger automobile operated by Earlene Huddleston, hereinafter termed plaintiff. On jury findings convicting the defendant railroad company of negligence amounting to proximate cause and setting the amount of the damages thereby occasioned, judgment was rendered for the plaintiff and her husband. Therefrom an appeal was perfected.

Judgment affirmed.

In Higginbotham v. Ritchie, Tex.Civ. App., 367 S.W.2d 210 (1963, no writ hist.), we recently had occasion to discuss our interpretation of the doctrine of "sudden emergency". In the verdict of the jury, as returned in this case, the plaintiff was found to have been confronted by a condition of sudden emergency when her automobile was approaching the railroad company's tracks on the instant occasion, and that she thereafter acted as an ordinary prudent person would have acted in the same or similar circumstances. Although the manner of submitting the question did not exactly comply with our ideas of propriety no complaint thereof is presented in the defendant's points of error. There is no contention that the question of sudden emergency is not in the case. We have no doubt but that such question was raised, assuming there was any negligence on the part of the plaintiff which she would excuse.

On the contributory negligence issues inquiring upon the matter of the plaintiff's negligence the jury acquitted her in each instance. It would therefore appear that from the standpoint of legal consequence the question of sudden emergency was not arisen. It is only when the plaintiff invoking the doctrine is guilty of negligence sought to be excused that it is important to be treated as part of his or her case. But there are numerous points of error which are brought forward by the defendant railroad company in which complaint is made because the trial court failed and refused to submit other and additional special issues which inquire into the matter of plaintiff's contributory negligence. We will therefore consider the case as though one, several, or even all the specially requested issues were submitted and answered favorably to the defendant, with "sudden emergency" properly treated as arisen and existent. This done, we would have had a jury verdict in which the plaintiff was found to have been guilty of contributory negligence (occurring after she was confronted with a condition of sudden emergency) proximately causing the collision which occurred, but which negligence was nevertheless excused. The contributory negligence (considered as occurring under conditions of emergency) would be excused because the jury found that occurrence thereof was when and after the plaintiff was confronted with a sudden emergency and that although negligent her acts and omissions were nevertheless those of a person of ordinary prudence under the same or similar circumstances.

Under this hypothesis the plaintiff would have been entitled to recover under the findings of the defendant railroad company's primary negligence though the requested issues had been submitted and found against her. The points of error, even if sustained,

would have availed the defendant nothing. For this reason they are overruled.

■ Considering the specially requested issues as inquiries upon the matter of plaintiff's negligence *before* the condition of emergency was arisen, and therefore not constituting an inquiry about the negligence thereafter occurring, we are of the opinion, and therefore hold, that in each instance the questions thereby posed merely constituted various phases or different shades of controlling issues which were submitted. In such instances requested issues are properly refused. Texas Rules of Civil Procedure, rule 279, and commentaries under the rule in Vernon's Annotated Texas Rules of Civil Procedure. For this additional reason the defendant's points of error are overruled.

■ By its point of error No. 9 the defendant railroad company contends that the plaintiff failed to plead, prove, and/or obtain a jury finding essential to the validity of the jury's determination that the crossing where the collision occurred was an extra-hazardous crossing, it being asserted by the point of error that the evidence established that the crossing, if extra-hazardous, was of temporary rather than permanent character. Were the point of error sustained, yet would it avail the defendant nothing for as support for the judgment there were other jury findings of which no complaint is made upon the defendant's primary negligence. The point of error is overruled as immaterial. T.R.C.P. 434.

■ By its point of error No. 1 the defendant railroad company complains that reversible error resulted because it was denied the right to introduce evidence showing that the crossing was not more than ordinarily dangerous through proof of the safety history thereof. In the discussion of the defendant's point of error No. 9 we have demonstrated that from the standpoint of support for the judgment it was immaterial whether or not the crossing was extra-hazardous. It also follows that any denial of the right to introduce evidence on the question would likewise be immaterial. Error, if any, would be harmless to the defendant. T.R.C.P. 434. Furthermore, the record fails to support the premise upon which the defendant's contention is made.

■ By its point of error No. 13 the defendant railroad company complains that reversible error resulted because the trial court, despite objection, permitted the plaintiff to impeach the defendant's witness Claude Beavers by an alleged prior statement he had made to Bill Gowan, an investigator. Premise for complaint was asserted because the proper predicate for impeachment had not been laid before the evidence was permitted.

It is obvious from the defendant's brief that it considers the testimony under examination as bearing upon the plaintiff's contributory negligence and upon the question of extra-hazardous crossing. It is not contended that it has any bearing upon the primary negligence of which the jury's verdict convicted the defendant railroad company. The nature of Beavers' testimony reveals that it bore solely upon acts and omissions of the plaintiff *after* she was confronted with the sudden emergency the jury found existent. That being the situation, and the jury having found that from the plaintiff's standpoint she was acting as a person of ordinary prudence under a condition of sudden emergency (whereby her negligence during such period was excused), the error, if any, would be harmless error. T.R.C.P. 434. On the matter of extra-hazardous crossing the error, if any, would likewise be harmless error under the same rule in view of our previously expressed holding that whether or not the crossing was extra-hazardous would be immaterial when the judgment would in any event be supported by other jury findings.

We finally discuss the points of error relating to the defendant's contention that reversible error resulted because of statements made by the plaintiff's attorney in the course of argument. There is no contention that the amount found as damages in the case was the result of passion and/or prejudice, so we may generally view the argument of which complaint is made as such may have had influence upon the jury as applied to the other jury findings.

In each instance of which complaint is brought forward the attorney for the defendant railroad company had objected at the time the argument was made, but his objection was overruled. The argument was therefore before the jury with the sanction of the trial court.

One instance of the argument about which complaint is made was of the character which would be calculated to inflame the minds of the jury *against* the defendant. Speaking with reference to the crossing, the attorney for the plaintiff said: "How many do you have to kill or run over before it becomes dangerous? How many human lives will have to be lost before this is called dangerous? I will tell you how notice can be brought home; by a jury finding that this is a more than ordinarily dangerous crossing, because it will go on file, and on record, that a jury of twelve good and true jurors of this County listened to the facts and circumstances involved in this case and held, and judgment was entered, that this was a more than ordinarily dangerous crossing, and that there should be a flashing signal there. And when that goes on file, and on record, then the world will know, and perhaps there will not be another gallon of blood shed at this crossing." We here take occasion to comment that in all the argument the attorneys for both sides treated the crossing as one where no accident had theretofore occurred. Further, it is noticed from the evidence that little, if any, blood was shed by the plaintiff.

In two other instances of jury argument the nature thereof was such as to elicit sympathy *for* the plaintiff and plaintiff's witnesses. In one instance counsel stated with reference to the plaintiff, as follows: "You had a chance to look at her. She is not any different from one of your wives or sisters. Was she sitting there lying to you?" In another instance counsel stated, as follows: "You judge the credibility of these witnesses. You judge, and you look Earlene Huddleston in the face when you come out of that jury room and say, 'Earlene, you are a liar.' You look everybody from Saint Jo in the face and say, 'You all just came over here and swore to a pack of lies about the railroad. The train was really blowing the whistle, Mr. Sampson. You lied about that. The train was really blowing the whistle, Mr. Pittman. You lied about that.' "

We are of the opinion that the trial court should have sustained the objections made to the argument of which complaint is made. It was improper argument. The question for decision, therefore, is whether the jury's reception of the argument constituted reversible error under T. R.C.P. 434. If we should believe, and hold, that a juror of ordinary intelligence would in the instant case have been persuaded by the argument to agree to a verdict contrary to that to which he would have agreed but for the argument, we would be bound to declare the existent error to have amounted to reversible error. Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954). In the determination of such we are obliged to examine the whole record, applying tests upon the preponderance of the evidence. In Goforth v. Alvey, as in the instant case, the trial court overruled objections to the improper argument.

It is true that the argument in the instant case is of the type calculated to create passion and/or prejudice, a subject with which the Supreme Court dealt in Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858 (1954). Therein it was held that the true test is the degree of prejudice flowing from the argument. In other words, since objections to

the argument were overruled in the instant case, the question is whether the argument, considered in its proper setting, was such as would have persuaded a juror of ordinary intelligence to agree to a verdict contrary to that to which he would have agreed but for its having been made. It would seem that the term "proper setting" would necessarily include the statement of facts.

The first of the leading cases upon the reversibility of judgments (under our Rules of Civil Procedure) because of improper argument was Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953). Therein it was stated that the question was to be determined "[i]n the light of the whole record". In Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367, 370 (1954), it was stated that "the whole record" includes the statement of facts. The author of the opinion further stated: "If the evidence is such that we believe the jury would in all probability have rendered the same verdict that was rendered here, whatever the argument of the defendant's counsel or lack of it, how can we logically say that the argument probably caused the rendition of an improper judgment based on that verdict?"

We have reviewed the statement of facts and the entire argument of the parties. Consideration given thereto, we do not believe that the improper argument was such as would in this case have persuaded a juror of ordinary intelligence to agree to a verdict contrary to that to which he would have agreed but for its having been made. In other words we believe that the jury, even without such argument, would have found the defendant railroad company guilty of primary negligence amounting to proximate cause,—would have refused to find the plaintiff guilty of contributory negligence amounting to proximate cause,— and would have found in answer to the issues submitted thereon that the plaintiff was acting in a condition of sudden emergency.

Judgment is affirmed.